## WINEPOL *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 259, September Term, 1958.]

*Decided June 9, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Walter D. Webster,* for appellant.

*T. Thornton Murray* and *Walter W. Claggett, Special Attorneys,* with whom were *C. Ferdinand Sybert, Attorney General, Joseph D. Buscher, Special Assistant Attorney General,* and *J. Edgar Harvey, Special Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Questions of evidence are presented for review in this appeal by an owner whose property was condemned by the State Roads Commission. In substance, his real complaint is the inadequacy of the jury's inquisition.

The property involved is a two-story brick building on Main Street in Salisbury. The first floor has two separate store

fronts and, at times, has been used for one store and, at other times, for two stores (one operated by the owner) devoted to the selling of economy shoes and low-priced ladies' clothing. A stairway between the store fronts leads to the second story, which is divided into four apartments containing three rooms and a complete kitchen. There are two bathrooms, each shared by the occupants of two apartments. The Commission offered three appraisers, each of whom appraised the property on the basis of its fair value, by adding to the estimated value of the land the replacement cost of the building, less depreciation. One, in addition to charging ordinary depreciation on the building, subtracted a so-called "functional" depreciation amounting to the $2600 that had been spent in converting the second floor into apartments, since, in the opinion of the witness, the property would have been as valuable if the area had been left open for a storage space. Another of the State's witnesses said that he did not base or test his appraisal on a capitalization of income, and the income the property could produce would not be an important factor in his evaluation.

The appellant produced two experts who set the value of the property at approximately $57,700. One of these, a real estate man, testified that the stores and the second floor apartments always would have been rented at a good income. The appellant testified that his property was worth $76,800, and that the income that it had produced over the years demonstrated that his estimate was accurate. No witness for the property owner was permitted to testify as to the actual rentals received in 1955 and 1956, the last years the property was tenanted. The trial court agreed with the Commission that evidence of rental income to be admissible would have to relate to June, 1958, the time of the taking. At that time the property was vacant because, according to the appellant, all occupants had moved out in 1956 under pressure of the State Roads Commission. The jury's inquisition was $35,000, several thousand less than was due the mortgagee for principal, interest and taxes advanced.

There was testimony that the tenant of one of the downstairs stores had not renewed his lease at its expiration on January 1, 1956, because the State was about to take the property for road improvements. There was other testimony that

in August, 1956 the appellant had been summoned to the Commission's office and told that it was going to take the property in about six months and that it frowned on large inventories in mercantile establishments at the time of taking. The appellant said that, as a result, he closed his own store at Christmas of 1956. It was shown that the appraisers for the Commission had visited the other tenants in the building in 1956 and had queried them as to the length of their leases, the rentals they were paying, and other pertinent data. The testimony was that it had been a matter of common knowledge since 1954 that the Commission and the City of Salisbury had entered into an agreement for the construction of the new road, which necessitated the taking, and that the work was to begin in due course.

Under these circumstances we think the refusal of the court to allow the appellant to show the actual income received from the apartments in 1955 and 1956, the years they were last rented, was prejudicial error. It is established that the owner may show the contribution to market value made by the uses for which the property is available at the time of the taking. *Bonaparte v. Baltimore,* 131 Md. 80, 83; *Pumphrey v. State Roads Commission,* 175 Md. 498, 506; *State Roads Commission v. Novosel,* 203 Md. 619. There was explicit, competent testimony that, except for the coming of the road, the property would have been available for, and rented as, stores and apartments. Capitalization of the income which a property will produce is relevant and pertinent evidence of its value to a willing purchaser, and the income it currently is producing, or recently has produced, in the form of rents bears on the question of what it will produce in the future, and, so, on its market value. *Bergeman v. State Roads Comm.,* 218 Md. 137, 140 ("This method of valuation by capitalizing the net rents is also an accepted one. * * * The courts distinguish between the capitalization of rentals and of profits from a business.") ; *State Roads Commission v. Novosel, supra,* at pp. 623-625 of 203 Md. ("It was entirely correct and legally admissible for the tenant to show the increase in rental value * * *.") ; *Pumphrey v. State Roads Commission, supra;* 1 Orgel, *Valuation under Eminent Domain* (2d Ed.), Secs. 157, 176-179. *Bonaparte v. Baltimore, supra,* approved a prayer that the

owner was entitled to the value of the property (which had been adapted for apartment use but never actually so used) "if employed for the most profitable use for which * * * it could have been applied", in the light of expert testimony "that the building was well adapted to apartment house uses, and that if thus employed, it would yield rentals indicating a property value of $9,200."

Under the circumstances of this case and in view of the conflict between the experts for the Commission, who attributed no value to the potential use of the property at the time of taking, and those for the property owner, who attributed substantial value to the fact that the property then was rentable, we think the inability of the appellant to substantiate the values he and his experts put on the property by showing the income actually received when last the property was rented, could not have failed to have hurt appellant's case.

The property owner contends that it was error for the trial court to strike out testimony of his real estate expert as to the value of metal frame chairs that were screwed to the floor of the store and of concrete paving in an alley over which there was a right-of-way by neighbors on each side, which constituted the rear twelve feet of the property. We find no error in these rulings.

Appellant also urges that it was error to refuse to admit testimony as to the sale of property claimed to be comparable to that here involved. It appears that the property alleged to be comparable is in a shopping district concededly of much higher grade than that in which the store of the appellant was located, and that its frontages on two commercial streets gave it an extraordinary and almost unique value. Under these facts, even the liberal approach approved in *Lustine v. State Roads Commission,* 217 Md. 274, and in the *Bergeman* case, *supra,* as to the general desirability of admitting evidence of nearby sales, leaving its weight to the trier of fact, would not compel a finding that the trial court abused its discretion in refusing to admit the evidence of the earlier sale.

*Judgment reversed, and case remanded for a new trial, costs to be paid by appellee.*