## STATE ROADS COMMISSION OF MARYLAND
## *v.* ADAMS, JR., ᴇᴛ ᴜx.

[No. 223, September Term, 1964.]

*Decided April 21, 1965.*

The cause was argued before HAMMOND, HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*J. Thomas Nissell* and *Herbert L. Cohen, Special Attorneys,* with whom were *Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellant.

*Cornelius F. Sybert, Jr.,* and *Walter R. Tabler* for appellees.

BARNES, J., delivered the opinion of the Court.

The State Roads Commission, appellant, filed a petiiton in the Circuit Court for Howard County on August 8th, 1963,

seeking to condemn for highway purposes 12.65 acres of appellees' land, in fee simple, together with certain minor appurtenant easements. From a judgment entered upon the inquisition of the jury assessing appellees' damages at $56,707, the Commission appeals to this Court.[1] Two questions are presented for our determination; as stated by the appellant, they are: 1. Was the lower court correct in permitting the testimony of the appellees' appraiser to be considered by the jury? 2. "Should the verdict of the jury be set aside inasmuch as it is quite apparent that it did not follow the court's instructions as stated—'If you should find that the highest and best use for which the land is adapted, is other or different than for farming purposes, you should not consider severance or consequential damages resulting to the remaining land as a farm unit'?" Although these two issues are but different sides of the same coin, as will appear later, we will consider them separately.

(i)

The subject property consists of a tract of land in the Fifth Election District of Howard County, consisting of approximately 196 acres, which has been in the family of the appellee, Edwin O. Adams, for about one hundred years, and which has been and, at the institution of condemnation proceedings, was being operated exclusively as a dairy farm. The part of the tract taken for the construction of a new Maryland Route 32 is 12.65 acres in area, 300 feet in width, and approximately 1780 feet in length. The effect of the taking was to bisect defendants' entire property: on the northerly side of the part taken is a severed area of 122.71 acres on which there are no improvements; on the southerly side is an area of 60.64 acres on which stand the dwelling,

---

1. The clerk's docket entries show that "judgment" was entered some 6 days after the filing of the inquisition. However, note that the inquisition answered by a jury in condemnation proceedings is a special verdict, under new Maryland Rule U19 a. Upon the return of that verdict the court must render a judgment *nisi* thereon, Rule U21 a, which "shall be deemed to incorporate the findings and awards of the inquisition," unless the court specifies otherwise. The procedure governing entry of judgment absolute under Rule U21 appears identical with that governing other civil cases. See *Merlands Club, Inc. v. Messall,* 238 Md. 359.

a large dairy barn, a milking parlor, and other normal farm improvements. The economic impact of this severance upon the continued use of the remaining Adams property as a dairy farm, is considerable. The testimony shows that the new Maryland Route 32 is a denied-access highway, and that merely getting from the southerly side to the northerly side of the farm (formerly accomplished directly) now necessitates the use of at least five different roads and involves a round trip of approximately 8 miles. Consequently, since the farm improvements are all located on the south side, the acreage on the north side is now nearly useless as supportive property for the dairy farm operations. The large herd of cows has had to be kept on the southerly 60.64 acres, and a reduction of the size of the total herd seems inevitable; furthermore, the devotion of the south part to grazing of cattle has deprived Adams of its use for raising crops. Finally, it appears that the bisection of the subject property deprives appellees of virtually the entire natural water supply of the farm. There is in this case no dispute as to the necessity of taking, or as to the date upon which the value of the property is to be determined.[2]

In the instant case a total of three estimates of damages were before the jury for its consideration. The Commission produced William B. Stromberg, a real estate broker and appraiser of 25 years' experience. The appellees called William S. Hanna, an appraiser also of many years' experience (whose qualifications were not questioned), and Edwin O. Adams himself. All three expressed the measure of defendants' damages as the dif-

---

2. The taking occurred on Feb. 7, 1963 and was made under the immediate-possession provisions of the Constitution of Maryland, Article III, Section 40B. Pursuant to this authorization, the Legislature has given the State Roads Commission two modes of obtaining immediate possession, 17 Md. L. Rev. 309, 314-315. Contrast the procedure under § 9 of Art. 89B with that under § 17 and § 18 of that Article. The apposite date of the taking varies according to the procedure used, and the above sections should be examined carefully.

If the State Roads Commission proceeds under Article 33A, the date of the acquisition is governed by § 4 and § 14 thereof, and by § 6, paragraph 2 of which deals with condemnors vested with a continuing power of condemnation.

ference between the fair market value of the whole property immediately before the taking and its fair market value immediately after the taking, as was proper; Code (1964, Cum. Supp.), Art. 33A, § 5(b) and § 6; *Pumphrey v. State Roads Commission*, 175 Md. 498, 2 A. 2d 668 (1938). Their values were:

|  | Before | After | Difference |
|---|---|---|---|
| Stromberg | $104,700 | $ 72,187.50 | $ 32,512.50 |
| Hanna | 180,710 | 111,511 | 69,199 |
| Adams | 201,800 | 98,766 | 103,034 |

Without going into laborious detail, it is sufficient for the purposes of this case to say that the single most important factor in measuring defendants' damages was not the fair market value of the 12.65 acres taken in fee simple, but was rather the consequential damage to the severed 122.71 acres to the north. All three witnesses agreed that the value of this area had been drastically reduced, and that the damage was at least 50% of its fair market value prior to the taking. That the consequential damages to the remainder of a tract, where there has been a partial taking, are properly considered, seems settled by the new condemnation code [3]—Article 33A, Section 5(b), Code (1964 Cum. Supp.), as amended. That section provides:

"(b) Where part of tract taken.—The damages to be awarded where part of a tract of land is taken shall be the fair market value (as defined in § 6) of such part taken, but not less than the actual value of the part taken plus the severance or resulting damages, if any, to the remainder of the tract by reason of the taking and of the future use by the plaintiff of the part taken. Such severance or resulting damages are to be diminished to the extent of the value of the special

3. Chapter 52 of the Laws of 1963, effective June 1, 1963, completely repealed Art. 33A and enacted the new condemnation code as Art. 33A. For the history of the new law and a synopsis of its more significant provisions, see Baker & Altfeld, *Maryland's New Condemnation Code*, 23 Md. L. Rev. 309 (1963). Also, see *Duvall v. Potomac Electric*, 234 Md. 42, 45, 191 A. 2d 893 (1964).

(particular) benefits to the remainder arising from the plaintiff's future use of the part taken."

This section effectively restated and codified the existing case law. See Baker and Altfeld, *Maryland's New Condemnation Code,* 23 Md. L. Rev. 309, 316 (1963). The variance among the three estimates of ultimate damages can be attributed mainly to the disparity in valuing the "raw" land initially. Stromberg valued the land at a price of $400 per acre; Hanna valued it at $700 per acre; Adams, at $800 per acre.

Mr. Adams was not questioned on direct examination as to the basis on which he concluded that his land was worth $800 per acre; he was not cross-examined at all. By contrast, Mr. Hanna was specifically requested, both on direct examination (see *Hance v. State Roads Commission,* 221 Md. 164, 156 A. 2d 644 (1959)) and on cross-examination, to state his reasons for valuing the subject property at $700 per acre. He stated that, in formulating his opinion as to value, he considered the sales prices paid for certain properties similar in locality and character to the Adams property. The sales which he considered were:

1) A sale from Harwood Owings to John Settle, of 87.7 acres of unimproved property, in 1961, at $700 per acre.

2) A sale from William Camby to Contee Sand & Gravel Company, of 128 acres of unimproved land, in 1963, at $801 per acre.

3) A sale from Kenneth Hobbs to Serenity Acres, Inc. of 155 acres of improved land, in 1963, at $774 per acre.

4) A sale from Meyer to Howard Research & Development Corporation, of 280.3 acres of land improved by "a few outbuildings," in 1963, at $1173 per acre with such improvements, at $1100 per acre without them.

Sale #1 was testified to without objection; sale #2 came in over objection, but the objection appears to be on an unrelated ground (remoteness of location), was apparently abandoned below and is not pressed here. Sales #3 and #4 are the real bone of contention; testimony with respect to these sales was admitted only over the strenuous protests of the appellant. At the close of Mr. Hanna's testimony,

appellant moved to strike his entire testimony, but the court denied its motion. These rulings on the appellant's objections and on its motion are the principal grounds of error assigned here. The Commission asserts that Howard Research and Development Corporation is a corporation which has been seeking to acquire, and now has acquired, 14,000 acres of contiguous land in Howard County for development as a residential subdivision; that this corporation does not possess the power of eminent domain; that the exigencies of assembling the parcels of land needed to complete this tract are such as to make the corporation a "captive buyer" willing to pay prices which are "higher than in normal market transactions"; and that no sale made to this corporation "can be considered as a comparable sale for the purposes of valuing the subject property in this case," as a matter of law.

In Maryland it is well settled that evidence of the price for which similar property has been sold in the vicinity may legitimately be used in support of, and as background for, the opinion of an expert testifying as to the value of the property taken in condemnation proceedings. *Williams v. New York, P. & N. R. Co.,* 153 Md. 102, 108, 137 A. 506 (1927); *Patterson v. Mayor & City Council of Baltimore,* 127 Md. 233, 241, 96 A. 458 (1915). There is a conflict of authority nationally upon the question of whether the price paid at voluntary sales of land similar to that taken is admissible as independent evidence of the value of the land taken. See Annotation, 85 A.L.R. 2d 110 (1962), *"Admissibility on issue of value of real property of evidence of sale price of other real property."* We adhere to the "Massachusetts" or "majority" view that evidence of such sales is admissible as primary evidence of the value of the property taken, or to support an expert witness's opinion as to such value, or both. *Hance v. State Roads Commission, supra; Taylor v. State Roads Commission,* 224 Md. 92, 167 A. 2d 127 (1961); see 5 Nichols, *Eminent Domain* (3rd ed.), Section 21.3 [1]. In those states which adhere to the Massachusetts view the question frequently arises as to whether or not the conditions of other real property together with the circumstances surrounding its sale, are sufficiently similar to those of the land taken as to permit the admission of the sale price of the former as

evidence of the value of the latter. In *Lustine v. State Roads Commission*, 217 Md. 274, 142 A. 2d 566 (1958), we held that the trial court has "considerable latitude" (or "wide discretion," *Bergeman v. State Roads Commission*, 218 Md. 137, 146 A. 2d 48 (1958)) in determining what sales are "reasonably comparable." Moreover, we went further in *Lustine* and declared it the better policy to admit testimony as to the sales where there are any reasonable elements of comparability, and leave the weight of the comparison to the consideration of the jury, together with such contrasting or distinguishing features as may be brought out on cross-examination or otherwise (*Lustine*, p. 281 of 217 Md.). Cf. *Winepol v. State Roads Commission*, 220 Md. 227, 151 A. 2d 723 (1959) and *State Roads Commission v. Smith*, 224 Md. 537, 548-549, 168 A. 2d 705 (1961). The appellant states that the question to be decided is whether Judge Macgill's rulings were "correct," but this formulation of the issue is ambiguous and perhaps misleading. We do not undertake to weigh the similarities *vel non* between allegedly comparable properties as matters of first impression in this Court to be decided without reference to the action of the trial judge. Rather, we decide only whether the standards enunciated in *Lustine* and *Bergeman* as applied to the facts of a given case "compel a finding that the trial court abused its discretion," *Winepol v. State Roads Commission, supra,* in admitting or refusing to admit the contested evidence. Even a finding of abuse of discretion does not compel a reversal: see the comments of Judge Prescott, speaking for the Court in *Hance, supra,* at page 176 of 221 Md., discussing the reluctance of the courts generally to set aside judgments in condemnation cases for errors in the admission or exclusion of evidence, in the absence of express showing that these errors caused "substantial injustice" to the complaining party.

Considering the details of the four sales testified to by Mr. Hanna in the light of the Maryland law as we have discussed it above, we hold that appellant's objections are not well taken. In the first place even if appellant's objections to sale #4, testified to by Mr. Hanna, were well founded, we do not perceive how the trial court fell into error in refusing to strike *all* of Mr. Hanna's testimony. We see no necessity or reason to throw

the baby out with the bath water. Appellant has cited no case holding that the excising of the offensive portions alone of Hanna's testimony would not have been sufficiently curative. Secondly, there is nothing in the record before us to show why sale #3, the sale from Hobbs to Serenity Acres, Inc., should not have been admitted, or that it suffers from the same vice as sale #4 allegedly does. There is no direct testimony, or even allegation or innuendo, that Serenity Acres, Inc. is the *alter ego* of Howard Research & Development Corporation or is its agent, or has any connection with it. Bearing this in mind, and recalling that sale #1 was introduced without objection, and that the objection to sale #2 was on an unrelated ground not pressed here, we think that only the propriety of the rulings with respect to sale #4 is before us.

This brings us to sale #4, the sale from Meyer to Howard Research & Development Corporation of 280.3 acres of land improved by "a few outbuildings," in 1963, at $1173 per acre with such improvements, at $1100 per acre without them. There are several similarities between the Meyer tract and the Adams tract upon which the trial court could have relied,[4] and upon which we might conclude that the appellant's objections go to the weight rather than to the admissibility of the disputed evidence. The Meyer tract is sufficiently close, in point of location and distance, and the sale thereof, sufficiently near, in point of time, as to furnish a test of present value, other considerations aside.[5] Also, the sizes of the respective tracts (280.3 acres for Meyer, 196 acres for Adams) are not "grossly dissimilar" as a legal proposition. Then, too, the Meyer tract was also farm land, improved only by "a few outbuildings." The fact that the grantee of the Meyer tract was Howard Research & Development Cor-

---

4. "Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission." Rule 56(3) of the Uniform Rules of Evidence, (approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association, 1953), dealing with admission of expert and other opinion testimony. (Not in force in Maryland.)

5. Appellees say that this sale falls within this Court's "5 year and 5 mile limits." But *Taylor v. State Roads Commission*, 224 Md. 92, 167 A. 2d 127 (1961), makes it plain that such "rule of thumb" is not a rule of law.

poration does not *necessarily* render all comparison meaningless. For example, there is evidence in the record that the commencement of the development of the 14,000 acres for residential use lies many years into the future. There is no suggestion that the tract had yet been platted for such use; *State Roads Commission v. Wood,* 207 Md. 369, 373, 114 A. 2d 636 (1955). As we said in *Wood,* "The vice in comparing subdivided land and unsubdivided land lies in the fact that the comparison is between a wholesale and a retail price, for the price of the platted lots includes the expense of subdividing and the promotional and sales costs of moving the individual lots." And although the appellant argues that the purchases made by the Development Corporation were *necessarily* at a higher-than-normal price, it impliedly concedes that this argument has applicability only as to those parcels of land purchased to complete or fill in the gaps in the overall 14,000-acre assemblage, or to those purchases made after the intentions of the corporation had become generally known. There is nothing before us to indicate that Meyer was a "holdout" or to show when and under what conditions the sale from Meyer to the Corporation took place.[6] The Corporation might well have purchased Meyer's 280 acres as a willing buyer, willing but not obligated to buy.[7]

Although what has been said above is sufficient, we think, to indicate that appellant's contentions go to the weight rather than to the admissibility of the disputed evidence, we base our disposition of these objections on the additional ground that there has been no satisfactory showing that the admission of the challenged evidence worked any "substantial injustice" to the appellant.[8] *Hance v. State Roads Commission, supra.* Prej-

---

6. We do not decide, as a rule of evidence, whether the proponent of a "comparable" sale has the burden—pure and unsullied, from start to finish—of proving the requisite similarities for the purpose of admissibility, or whether the objectant has the duty to come forward with evidence of dissimilarity, once the proponent has made an initial showing of comparability.

7. Compare the definition of fair market value in the new law— Art. 33A, Sec. 6.

8. Rule 4 of the Uniform Rules of Evidence (referred to in footnote 4) provides: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by rea-

udice, or the lack of it, is always of significance to an appellate court, and it assumes increased importance in condemnation cases, in view of the "myriad of different items of evidence" sought to be introduced, (*Hance,* at 176). See *Mayor & City Council of Baltimore v. State Roads Commission,* 232 Md. 145, 151, 192 A. 2d 271 (1963). Quite apart from the question of the impact of the contested evidence on the jury, dealt with in part (ii) of this opinion, appellant cannot even claim prejudice at the hands of the appellees' appraiser. Recall that the price-per-acre of the four sales which Hanna considered in formulating his opinion as to fair market value, were, respectively, $700, $774, $801, and $1100. His independent valuation of the Adams land was $700 per acre, the same as the sale price of the lowest "comparable" considered. Furthermore, he testified repeatedly that his opinion did not depend upon these four sales prices, but rather that he used such information only as "market data," as a "guide," or as "background" in formulating his own, independent, opinion of value:

"Q. Well, do you consider an assemblage of 14,000 acres comparable sales for the comparability of one piece of property?

"A. I didn't say that they were comparable. That's market data that I used as a guide. None of my appraisals have ever reached this price that they paid."

Again he said:

"Now, using these sales, I try not to refer to them in my own sense as saying they are comparable, but [as] market data and as a guide to assist me in coming to a conclusion. You have to have something to point at, to rest on, to satisfy yourself."

---

son of the erroneous admission of evidence unless (a) there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection, and (b) the court which passes upon the effect of the error or errors is of opinion that the admitted evidence should have been excluded on the ground stated and probably had a substantial influence in bringing about the verdict or finding."

Finally, the record shows that when cross-examined as to specific items of dissimilarity between the Meyer (sale #4) and Adams properties (as, for example, the characteristics of their respective improvements), Mr. Hanna readily admitted that such items were not completely comparable.

For all these reasons we conclude that the rulings of the court below on appellant's objections and motion did not constitute an abuse of the wide discretion reposed in it.

(ii)

The second question presented by the appellant for our determination has been set out at the beginning of this opinion; it is ambiguous at best. Stated most baldly, the contention is that it is not mathematically possible for the jury to have assessed appellees' damages at $56,707 unless it 1) determined that the highest and best use of the Adams property was for something other than farm uses, and then 2) awarded severance or consequential damages as if it were a farm—thereby rendering the verdict internally inconsistent and in contravention of the court's charge. This ingenious (or ingenuous) conclusion is arrived at by a five-step process of reasoning. 1. Under the court's charge a finding that the most profitable use of the Adams tract is for something other than farm uses and a finding that the appellees are entitled to consequential or severance damages, are mutually exclusive. 2. Mr. Hanna was of the opinion that the highest, best, and most profitable use of the property was for development as a residential subdivision. 3. Sale #4 (at $1100 per acre) was purported by Hanna to be a sale of comparable farm property, but its high price indicates that the grantee must have intended to use the tract for residential development. 4. In admitting evidence of sale #4, the court hopelessly confused farm use and residential use, and the allowable damages apposite to each such use, in the minds of the jurors. 5. The size of their verdict shows that the jury necessarily must have allowed "double damages" to the appellees. We do not find it necessary to dwell at any length upon this contention: merely to state its supportive chain of reasoning is to expose its underlying fallacies.

We do, however, feel it desirable to add a few brief remarks. The appellant's allegation, stated repeatedly in the court below

and in its brief filed with this Court, that the appellees' appraiser, Hanna, testified that the highest and best use of the Adams tract was for development as a residential subdivision, —is simply not borne out by the record before us. On the contrary, he stated unequivocally that the highest, best, and most profitable use of the property taken was for farm uses, and he held to this view consistently. For example:

> "Q. What is the highest and best use for this property?
> "A. Farm."

Appellant's assertion that by introducing the Meyer to Howard Research & Development Corporation sale price of $1100 per acre, Hanna, in effect, "switched theories," read in the light of the testimony as a whole,—is a mere characterization or conclusion; and from what we have said in part (i) above, an unwarranted one.

The court below instructed the jury:
> "* * * [I]f you should find that the highest and best use for which the land is adapted is other or different than for farming purposes, you should not consider any severance or consequential damages resulting to the remaining land as a farm unit."

This instruction was included in the court's charge at the behest of the Commission, over the vigorous protests of the property owners, and was expressly excepted to by the latter (Md. Rule 554). It is true that in determining the value of land taken by eminent domain, the trier of fact is not limited to the value of the land for the purposes for which it is actually being used, but may consider all uses to which it is adapted and to which it reasonably might be put in the immediate future or in the reasonably near future. *State Roads Commission v. Warriner*, 211 Md. 480, 128 A. 2d 248 (1957); 1 Orgel, *Valuation under Eminent Domain* (2d ed.), Sec. 28 et seq. However, this Court ruled in *D'Arago v. State Roads Commission*, 228 Md. 490, 180 A. 2d 488 (1962) that "As in other civil cases, the instructions to the jury in a condemnation case must conform to the issues and the evidence" (p. 498 of 228 Md.). In view of the compelling, affirmative evidence that the most advantageous

and valuable use of the Adams tract is for farming uses, and in view of the paucity of testimony as to any other such use, the trial court may have erred in charging the jury on the theory of an alternative use. See *West v. Belle Island Cab Co.*, 203 Md. 244, 254-255, 100 A. 2d 17, (1953); see also, 88 C.J.S. *Trial*, Sec. 383. We do not find it necessary to pass upon this point, however, as the owners filed no cross-appeal to this Court and the appellant was obviously not injured by the instruction granted at its request.

Upon this question, as upon the question discussed in part (i) of this opinion, the appellant has singularly failed to show what substantial injustice has been done to it. We are not dealing with an award of damages whose size is greatly in excess of the highest estimate of the appellees, and which must be taken to be based entirely upon the impressions gained by the jury from its view of the premises. Cf. *Bergeman v. State Roads Commission, supra*, at 142-143 of 218 Md. Nor does the verdict rest upon the untutored judgment of the property owner. Rather, the assessment of damages of $56,707 is substantially below the more conservative estimate offered on behalf of the appellees; it is, in fact, about midway between such estimate ($69,199) and that offered on behalf of the appellant ($32,512.50). The jury is not bound to accept *in toto* the opinion of any of the witnesses, either as to the aggregate amount of damages or as to the weight to be given a particular element or factor of damages, *State Roads Commission v. Novosel*, 203 Md. 619, 625-626, 102 A. 2d 563 (1954). Cf. *Bergeman* in which we upheld a verdict lower in amount than the lowest estimate offered by the condemnor. Insofar as the size of the verdict in this case "proves" anything, it "proves" only that the jury did not value appellees' land at $1100 per acre and, furthermore, that it substantially discounted the more conservative estimate of $700 per acre. Quite apt here is the salient observation made by Chief Judge Brune, for the Court, in *Mayor & City Council of Baltimore v. State Roads Commission, supra*: "The appellants' main difficulty seems to be that the jury did not accept their appraiser's valuation" (p. 151 of 232 Md.).

> *Judgment affirmed, the appellant to pay the costs.*