GOODMAN, ET UX. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 25, September Term, 1968.]

728

*Decided January 8, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, FINAN, and SINGLEY, JJ.

*Leonard S. Goodman* in proper person.

*Charles J. Sullivan, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This is a condemnation proceedings in which the State Roads Commission of Maryland (Commission), sought to acquire, in fee simple, property belonging to Leonard S. Goodman and Barbara L. Goodman, his wife, (appellants). The purpose of

acquisition is for the future construction of Interstate Route I-95. The property consists of 49,445 square feet, zoned C-2, located on the southside of Cool Spring Road, between Adelphi Road and Riggs Road, within the perimeter of the Capitol Beltway, Route 495, in Adelphi, Prince George's County, Maryland. C-2 is the highest commercial zoning in Prince George's County and the property is improved by a one and a half story frame dwelling and a masonry dwelling.

The appellants purchased the property from J. Carl West in 1966 for $27,500.00 or approximately 56 cents per square foot. After learning that an interstate highway would bisect the property the appellants requested the Commission to purchase it. The Commission offered the appellants less than $30,000.00 or about 60 cents per square foot and the appellants rejected it. The Commission on June 23, 1967, filed a petition for the condemnation of the property in the Circuit Court for Prince George's County. Soon thereafter the appellants requested a hearing before the Board of Property Review for Prince George's County which Board, on October 12, 1967, awarded the appellants $37,083.75 or 75 cents per square foot. The Commission appealed the award, as did the appellants. The case was tried in the circuit court on December 7 and 8, 1967.

The Commission called as one of its witnesses Alfred C. Greer, an independent appraiser, who testified that based upon his analysis of the area in which the subject property was located [residential], and the recent sale of the property to the appellants, his valuation of the property at the time of the taking was $29,667.00 or about 60 cents per square foot. The appellants objected to Greer's testimony on valuation because in supporting his conclusion he used, (1) the price paid by the appellants when they acquired the property which transaction the appellants contend was a forced sale; and (2) the residential use of the commercially zoned land and the residential character of the surrounding neighborhood. The appellants' objections were overruled. Greer further testified that the highest, best and most profitable use of the subject property was commercial and that his appraisal was founded upon other commercial property sales in the general area, although in his opinion these were not comparable, nor did he believe that any comparable sales

existed because of the unique location, topography and size of the subject property. At the close of Greer's testimony the State rested its case.

The appellants then called as their first witness J. Carl West, their predecessor in title, who testified that he had initially purchased the property with the intention of improving it under its commercial zoning classification. Mr. West further testified that in October, 1965, he had suffered a heart attack and that during November and December of 1965 he was hospitalized for five weeks as a result of his heart condition. He stated that when he came out of the hospital "I was in no physical condition to do anything with the property"; that it was too much of a burden for him; that he had to evict the tenants for non-payment of rent and that vandals on two occasions had broken into the property. He advertised the property for sale on April 3, 1966, and Goodman called the same day evincing interest and submitted his offer which was accepted on April 4, 1966. The lower court would not permit Mr. West to testify as to whether he sold the property because of his health, sustaining the State's objections to that inquiry.

Next the property owner, Leonard S. Goodman, testified that he had purchased the property approximately a year before the taking and that in his opinion its value at the time of the taking was from $1.00 to $2.00 per square foot.

Then John E. Gogarty, appraiser for the property owner, testified that in his opinion the property had a market value of $49,000.00 or $1.00 per square foot and that his appraisal was based on three or four comparable sales within at least a four mile radius of the subject property. He further stated that he did not know of any piece of C-2 land within the perimeter of the Capitol Beltway which could be bought for less than $1.00 per square foot and that it was his opinion that the highest and best use for this land was commercial, admitting however, that the subject property was unique. The appellants rested their case at the close of Gogarty's testimony.

The court in its instructions to the jury defined "actual fair market value" as "the amount of money the buyer, willing but not compelled to buy, would pay and which a seller, willing but not compelled to sell, would accept, both being fully informed.

* * * It is not an arbitrary figure which the property might bring at a forced sale, brought about by the owner being in strained or adverse circumstances." The appellants requested the Court to instruct the jury that if they considered the sale from West to Goodman to be a forced sale it should not then be considered as evidence as to the fair market value of the property. The court denied this instruction. The jury returned an inquisition in the amount of $30,000.00. It is from the judgment entered on that inquisition that this appeal is taken.

The appellants contend the trial court erred in admitting evidence, (1) testimony as to the valuation of the property based on a forced sale, and (2) evidence of value based on the residential use of commercial land.

We shall limit our discussion to the first issue raised by the appellant as we fail to find any merit in the second assignment of error.

We agree with the lower court's action in refusing to grant the appellants' requested instructions to the effect that, if they considered the sale between Mr. West and the Goodmans to be a forced sale, they should not consider it as evidence relating to the fair market value of the property. The question of whether or not the sale constituted a forced sale is a legal question and not a question of fact for the jury. Furthermore, after reviewing the facts and circumstances surrounding the sale of the property by Mr. West to the Goodmans we are of the conclusion that the transaction does not, as a matter of law, meet the requirements of a forced sale.

"* * * It has been said that 'involuntary sales' imply compulsion under a decree, execution or something more than inability to maintain the property. The element of compulsion must be based on legal, not economic, factors. For the purpose of determining admissibility of comparable sales, compulsion is not shown to exist where a person is compelled by force of circumstances to part with property which he might desire to hold. Nevertheless, although it has been recognized that the concept of a forced or compulsive sale includes force or compulsion as a result of some

kind of legal process, it has been held that compulsion may also be created by business circumstances." *Nichols on Eminent Domain*, 3rd Ed. Vol. 5, § 21.23 p. 462.

Also, in *Forest Preserve District v. Eckhoff*, 372 Ill. 391, 24 N.E.2d 52 (1939) the Court correctly stated the legal principle regarding "forced sales" when it said:

"* * * a person may be compelled by force of circumstances to part with property which he might desire to hold, but involuntary sales imply compulsion under a decree, execution or something more than inability to pay upkeep charges. * * *." *Id.* at 54.

Indeed, had the sale between the former owner and the condemnee been a forced sale it would not have been admissible in evidence; however, since it was not a forced sale and was admissible, we think that all of the material circumstances surrounding it should have been admitted and an appropriate reference to these circumstances should have been included in the instructions. The impact of testimony concerning a recent sale between a former owner and the condemnee is bound to be substantial, and the jury is likely to place more weight on it than any comparable sale, as obviously it did in this case. We think the property owner is, therefore, entitled to have the jury consider any legitimate evidence which might enlighten them as to the true nature of the sale, and thus place it in a fair and proper perspective.

We think that the lower court erred in not including in its instructions language to the effect that, in arriving at a fair market value of the property, the jury could properly take into account all of the circumstances surrounding the sale between Mr. West and the Goodmans, including the undisputed fact that Mr. West had sustained a severe heart attack requiring hospitalization shortly prior to his advertising the property for sale, as well as his motive for selling the property.

In *Hickey v. United States*, 208 F. 2d 269 (3rd Cir. Ct. App. 1953), the Federal Government in 1951 condemned the Penn Athletic Club in downtown Philadelphia, depositing $1,-

250,000.00 in court. The Board of Review reported $2,865,-000.00 was the fair market value. The Government being dissatisfied with the Board of Review figure demanded a jury trial which resulted in a verdict of $2,100,000.00 in favor of the condemnee. At the trial it was revealed that the Penn Athletic Club owned and occupied the building from 1926 to 1942, when it could no longer afford to maintain the property and deeded it to the Girard Trust Company as trustee for its bondholders. Girard leased the building to the Securities and Exchange Commission from 1942 to 1948 and then sold the property in August, 1948, to the condemnees for $1,250,000.00. The condemnee's witnesses all testified that the property was worth in excess of $3,000,000.00 and the government's witnesses testified to a value of $1,500,000.00. The Government assigned numerous grounds for appeal among which was the fact that twelve times during the course of the trial the trial judge reiterated that the government was placing too much emphasis on the sale between Girard Trust and the condemnee. The government felt that these admonitions from the bench were prejudicial to their case. The government also contended that the repeated use by the trial judge in his charge to the jury of the words "willing seller" constituted a strong suggestion that the court itself believed that the sale between Girard Trust and the condemnee was a forced sale. The appellate Court while reversing and remanding the case on other grounds had this to say about the government's contention concerning the forced sale issue:

> "* * * The phrase 'forced sale' is used in the law of condemnation to describe a sale of property which is inadmissible as evidence of value because elements of compulsion so affected the seller that the sale could not be said to be fairly representative of market value at the time made. The conception of a forced or compulsive sale includes force or compulsion as a result of some kind of legal process. Thus sales on foreclosure or execution are treated as forced sales. *Baetjer v. United States,* 1 Cir., 1943, 143 F. 2d 391, 397. But the compulsion may also be that created by business circumstances. For example, a property taken in discharge of a debt may be considered a forced sale, where

the creditor had little choice in the matter. See *Land-quist v. City of Chicago,* 1902, 200 Ill. 69, 65 N. E. 681. But compare *Sargent Barge Line, Inc. v. New-town Creek Towing Co.,* D. C. E.D.N.Y. 1932 (The Welfare), 1 F. Supp. 585. A forced sale is one which has no probative value whatever and therefore must be excluded from evidence. In the instant case, evidence of the 1948 sale of the condemned property came into the record without objection. Therefore it should not be argued that the trial court treated this sale as a 'forced sale' within the meaning of that phrase as strictly defined by precedent."

\* \* \*

"Nevertheless, the condemnees did and do point out some features of the 1948 sale which constituted some evidence at least that Girard was not entirely a free agent in completing the 1948 sale. Some bondholders desired the property to be sold; the property was vacant; a tax assessment was outstanding against the property; Girard was acting as trustee; and a quick sale of the property would eliminate Girard's continuing liability for real estate taxes. While we agree that these features do not amount to serious compulsion, it was nevertheless entirely within the trial court's discretion to point them out as part of his charge. The court did not state to the jury that these features amounted to compulsion and we cannot say that the phrase 'willing seller' necessarily implies serious compulsion in view of the fact that this sale had been admitted into evidence. The trial court's charge on this point did not exceed the bounds of its discretion and we find no reversible error here." *Id.* at 275, 276.

In *Hickey, supra,* the sale having been admitted into evidence, the appellate Court found it to be within the trial court's sound discretion to point out circumstances surrounding the sale which qualified the voluntary character of the seller's action, although not amounting to such compulsion as would constitute a forced sale. Since it lies within the trial court's discretion to point out

elements of the transaction which may affect its voluntary quality, conversely, we think under certain circumstances it is an abuse of the trial court's discretion not to instruct the jury as to circumstances which may affect the voluntary quality of the sale. Again, in the case at bar, the witnesses for the State had no comparable sales to offer within a radius closer than two or three miles. The one witness for the State, Mr. Greer, relied entirely on the sale between Mr. West and the condemnees as the basis for his evaluation. We think that under these circumstances it was an abuse of the lower Court's discretion not to comment in its instruction on the circumstances surrounding the transaction which may have contained elements of compulsion and may have affected the voluntary quality of Mr. West's action in selling the property to the condemnees.

Since we find the court below in error in not instructing the jury to consider all of the circumstances surrounding the sale to the condemnee, it is unnecessary for us to elaborate on the appellant's second grounds for appeal concerning the testimony of the State's expert appraiser regarding the residential use of the condemned property which was zoned commercial. It suffices to say that we find no merit to this contention and the testimony of the State's witness in this regard merely stated the facts as he viewed them.

*Judgment reversed, appellee to pay costs.*