## COLONIAL PIPELINE COMPANY *v.* HELEN GIMBEL AND ETHEL POSNICK, Successor Trustees

[No. 854, September Term, 1982.]

*Decided March 3, 1983.*

The cause was argued before MORTON and LISS, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Paula Peters,* with whom were *Wayson, Klos & Peters* on the brief, for appellant.

*M. Natalie McSherry,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

Colonial Pipeline Company (hereinafter "Colonial"), the appellant herein, filed a petition in the Circuit Court for Anne Arundel County, seeking to condemn property owned by the David W. Chertkof Trust. At the time of trial, the surviving trustee of the David W. Chertkof Trust was Jack O. Chertkof, who has since that time passed away. The successor trustees are Helen Gimbel and Ethel Posnick, the appellees herein.

The parties filed a stipulation on May 15, 1981, in which the appellees granted to the appellant the right to enter the property and to set the date of valuation of the property rights acquired by the appellant. The case was heard by a jury on November 19 through 24, 1981. Prior to trial, the appellant filed a motion in limine seeking to exclude the

testimony of Carl Heinmuller, a real estate appraiser to be called by the appellees, to exclude any and all references to the consideration paid by Colonial in 1963 for an easement through the same property and to prohibit the testimony of the defendant, Jack O. Chertkof, Trustee, giving his opinion of the value of the easement acquired by Colonial in this case. The motion was denied.

Following evidentiary objections, the appellant moved to strike the testimony of Carl Heinmuller, and to strike any and all references to the price paid by the Colonial in 1963. The court denied those motions. The appellant also sought to strike the opinion testimony of Jack O. Chertkof, whom the court had initially accepted as an expert on the value of real property. The court granted the appellant's motion to strike the qualification of the defendant as an expert but denied the appellant's motion to strike his opinion entirely, permitting his testimony as to value as an owner. The jury returned a verdict in favor of Chertkof in the amount of $177,500 for the property rights acquired by appellant and $22,500 for the damage to the trees on the temporary work space. A motion for a new trial was filed by the appellant on December 7, 1981, and denied. The appellant then noted this appeal, raising the following issues to be determined by this Court: [1]

1. Whether a sale 18 years old is too remote in time to be a comparable sale in a condemnation proceeding?

2. Whether a sale of an easement may be admitted in evidence as a comparable sale when the rights conveyed are substantially different and no adjustment in price is made by the appraiser for the differences?

3. Whether the trial court erred in permitting an expert to testify as to his opinion of value when the expert used the consumer price index to adjust for the expiration of time in a comparable sale made 18 years earlier?

4. May an expert appraiser give opinion testimony concerning corporate purpose in a sale by condemnation?

---

1. The value of the trees is not an issue in this appeal.

5. May a trustee give opinion testimony concerning the value of real property owned by the trust?

— THE FACTS —

The Chertkof property involved in this case is a continuous strip of land, over four miles in length, which extends from a point just east of Hammonds Ferry Road in Anne Arundel County to Pennington Avenue in Baltimore City. The property was originally assembled by the Baltimore Gas & Electric Co. for the purpose of a utility right of way. Much of the parcel is limited to 60 or 100 feet in width.

When Chertkof acquired the property from the Baltimore Gas & Electric Co. in 1945, it was subject to an easement and right-of-way running the length of the property for a pipeline owned by Sinclair Refining Co. In 1963, Colonial, which had since purchased the Sinclair Pipeline right-of-way, purchased an additional pipeline right-of-way from Chertkof for a price of $110,000. The newly acquired pipeline right-of-way was ten feet in width parallel to the existing Sinclair pipeline. In addition, Colonial was granted rights of ingress and egress to the right-of-way through a 25-foot wide strip which included both pipelines. Chertkof retained the right to use or sell that portion of the 25-foot area south of the ten-foot right-of-way for additional pipelines, conduits or utility poles.

In 1978, Colonial (with other oil pipeline corporations) was granted the power of eminent domain to acquire property for additional pipelines adjacent to and within 50 feet of existing rights-of-way, pursuant to Maryland Code (1957, 1973 Repl. Vol., 1982 Cum. Supp.) Article 23, § 341A (b).

In early 1981, Colonial sought still another pipeline right-of-way from Chertkof. The additional right-of-way sought was also 10 feet in width adjacent to the 10-foot right-of-way acquired in 1963. In this instance, however, the right-of-way to be acquired stopped at the Baltimore City/Anne Arundel County line.

Both Colonial and Chertkof presented testimony at trial from expert real estate appraisers as to the fair market value of the right-of-way acquired. The jury determined the fair market value to be $177,500.

At issue before the jury was the present day fair market value of the easement and right-of-way rights acquired by Colonial in the Chertkof property. Colonial's appraiser, qualified as an expert by the court, testified that in his opinion the value of the rights acquired by Colonial was $18,600. Chertkof's appraiser testified that the fair market value was $322,806, and Chertkof himself, as the owner of the property, testified that the fair market value was $500,000. Chertkof's appraiser used only one comparable sale, the sale to Colonial 18 years prior to the date of this acquisition, in arriving at his opinion of the value of the rights acquired by Colonial. The appraiser testified that the highest and best use of the property was as a pipeline right-of-way. The expert then adjusted the price paid in 1963 by the percentage increase in the consumer price index over those 18 years. Colonial's appraiser testified that the consumer price index was not a method accepted within the trade to adjust the value of land for the expiration of time.

In rebuttal, Colonial offered a retired Colonial Pipeline employee who had been involved in the negotiations in 1963, and who testified that Chertkof's property was at the point of termination of the 1963 pipeline and that to have gone around the property at that time would have resulted in substantially greater construction costs as well as ongoing production costs, in that more miles of pipeline would have been required.

Appellant argues that:

> The 1963 sale should not have been admitted as a comparable sale both because it was too remote in time and because the rights acquired were too dissimilar to be of probative value.

* * * * *

Immediately prior to the acquisition in this proceeding (as a result of the 1963 acquisition), Colonial had rights in 25 feet of the Chertkof property. The acquisition in this proceeding involves no new land of the defendant. This involves an additional right within the existing easement. Therefore, the issue in this case is the fair market value of *burdening an existing easement with an additional servitude.* The additional servitude involves no new surface uses of the land. It involves only the right to lay an additional pipeline.

The 1963 agreement, on the other hand, involved surface as well as underground uses and involved land previously unburdened with easements. The consideration recited in the deed in 1963 was not allocated between the property rights acquired and the use of temporary workspace, between the value of the easement and damages to the remainder of the property of the defendant or between the value of the property rights acquired and damage to the trees and vegetation.

Appellant contends that the trial court erred in permitting Chertkof's appraiser to testify concerning his opinion as to the fair market value of the rights acquired. It argues that the circumstances of the 1963 acquisition were substantially dissimilar to the acquisition in the present proceedings in that the present proceedings involve only one sub-surface right in 10 feet of land while the 1963 agreement involved surface and underground rights in 25 feet of land. Moreover, appellant contends Chertkof's appraiser failed to adjust the value of what the appellees owned on the date of valuation, burdened with the pre-existing easement. Appellant concludes that for these reasons the 1963 acquisition of Colonial represents the special value of the property to Colonial prior to its acquisition of the right of eminent domain and not the fair market value.

Appellant concedes that imposing an additional burden on an easement gives a right to damages to the landowner. *Moale v. City of Baltimore,* 5 Md. 314, 61 Am. Dec. 276 (1854). If a deed contains a restriction on commercial uses, that restriction must be considered in valuing the land taken. *Rogers v. State Roads Commission,* 227 Md. 560, 177 A.2d 850 (1962). If land is subjected to an existing servitude to lay an oil pipeline, in a subsequent proceeding to condemn for an additional line, the land must be valued with the existing servitude. *United Fuel Gas Company v. Mauk,* 272 S.W.2d 810 (Ky. 1964). Moreover, when part of the land is taken, the measure of damages to the property owner is the difference in fair market value of the property immediately before the taking and immediately after the taking. Maryland Code (1974, 1981 Repl. Vol.) § 12-104 (b) of the Real Property Article; *Big Pool Holstein Farms, Inc. v. State Roads Commission,* 245 Md. 108, 225 A.2d 283 (1967); *State Roads Commission v. Hance,* 242 Md. 137, 218 A.2d 33 (1966); *State Roads Commission v. Adams,* 238 Md. 371, 209 A.2d 247 (1965).

"The fair market value of property in a condemnation proceeding is the price as of the valuation date for the highest and best use of the property which a vendor, willing but not obligated to sell, would accept for the property, and which a purchaser, willing but not obligated to buy, would pay. . . ." Maryland Code (1974, 1981 Repl. Vol.) § 12-105 (b) of the Real Property Article. Since fair market value is ultimately an issue for the trier of fact, comparable sales are admissible in establishing damages in eminent domain cases. *Brinsfield v. Mayor of Baltimore,* 236 Md. 66, 202 A.2d 335 (1964). Maryland adheres to the majority view that evidence of comparable sales is admissible as primary evidence of property value, or in support of an expert witness's testimony as to such value, or both. *State Roads Commission v. Adams, supra.* However, the price paid for comparable property under the threat of condemnation is not admissible as such a sale is not a voluntary one. *Perlmutter v. State Roads Commission,* 259 Md. 253, 269 A.2d 586 (1970).

The Maryland Court of Appeals has recognized that there are circumstances other than threats of condemnation in which the price paid for property does not reflect the fair market value of the property and, consequently, the price paid is inadmissible. Sales made under a decree or execution are inadmissible. *Goodman v. State Roads Commission,* 251 Md. 727, 731, 248 A.2d 796 (1969). Similarly, a property taken in discharge of a debt is inadmissible. *Id.,* at 733-734. The test for the admissibility of comparable sales is whether the sale tends to prove the value of the subject property. *Trustees v. Chicago City Bank and Trust Co.,* 262 N.E.2d 80, 82 (Ill. 1970).

In the *Goodman* case, the court also recognized that a sale forced by business circumstances from the perspective of either the buyer or the seller would be excluded because a forced sale is one which has no probative value whatsoever and therefore must be excluded from evidence. *Id.,* at 733-734. The *Goodman* court also made it clear that the question of whether the sale was forced is a question of law and not of fact. *Id.,* at 731.

The standards to be applied in determining the admissibility of comparable sales were explored by the Court of Appeals in *State Roads Commission v. Adams, supra,* where the Court stated:

> In *Lustine v. State Roads Commission,* 217 Md. 274, 142 A.2d 566 (1958), we held that the trial court has "considerable latitude" (or "wide discretion"), *Bergeman v. State Roads Commission,* 218 Md. 137, 146 A.2d 48 (1958) in determining what sales are "reasonably comparable." Moreover, we went further in *Lustine* and declared it the better policy to admit testimony as to the sales where there are any reasonable elements of comparability, and leave the weight of the comparison to the consideration of the jury, together with such contrasting or distinguishing features as may be brought out on cross-examination or otherwise (*Lustine,* p. 281 of 217 Md.). Cf. *Winepol v. State Roads Commission,*

220 Md. 227, 151 A.2d 723 (1959) and *State Roads Commission v. Smith,* 224 Md. 537, 548-549, 168 A.2d 705 (1961). The appellant states that the question to be decided is whether Judge Macgill's rulings were "correct," but this formulation of the issue is ambiguous and perhaps misleading. We do not undertake to weigh the similarities *vel non* between allegedly comparable properties as matters of first impression in this Court to be decided without reference to the action of the trial judge. Rather, we decide only whether the standards enunciated in *Lustine* and *Bergeman* as applied to the facts of a given case "compel a finding that the trial court abused its discretion," *Winepol v. State Roads Commission, supra,* in admitting or refusing to admit the contested evidence. Even a finding of abuse of discretion does not compel a reversal: see the comments of Judge Prescott, speaking for the Court in *Hance, supra,* at page 176 of 221 Md., discussing the reluctance of the courts generally to set aside judgments in condemnation cases for errors in the admission or exclusion of evidence, in the absence of express showing that these errors caused "substantial injustice" to the complaining party. [238 Md. at 379].

Considering the principles enunciated in *Adams,* we conclude that in the instant case there were "reasonable elements of comparability" to permit the 1963 acquisition to be admitted into evidence and "the weight of the comparison . . . together with such contrasting or distinguishing features as may be brought out on cross-examination or otherwise" should have been and were left to the consideration of the jury. The most obvious element of comparability is the fact that the two sales involve property rights in the same parcel of land. Appellant points out that there is now a change of circumstances which renders the two acquisitions dissimilar. These circumstances include the appellant's newly acquired right of eminent domain as well as the differ-

ences in the property rights acquired, in that the 1963 agreement involved surface and sub-surface rights in 25 feet of land, whereas the present acquisition involves only sub-surface rights in 10 feet of land. Moreover, the present acquisition involves burdening only an existing easement with an additional servitude, not the creation of an entirely new easement. However, the record is clear that these dissimilarities were thoroughly elicited on cross-examination, thereby leaving the weight of the comparison to the consideration of the jury and that the jury did in fact consider these differences, in that the verdict returned by the jury was substantially less than the value assigned to the property by Chertkof's appraiser.

Appellant next argues that the 1963 conveyance was too remote in time to be admissible as a comparable sale. Although "[t]here is no fixed period of time in which the purchase price of property sought to be condemned should be either admitted or excluded from evidence," *Mayor and City Council of Baltimore v. Schreiber,* 243 Md. 546, 551, 221 A.2d 663 (1966), the trial courts are given considerable latitude and discretion in this area. *Taylor v. State Roads Commission,* 224 Md. 92, 167 A.2d 127 (1961). In *Mayor and City Council v. Schreiber, supra* at 551, the Court of Appeals stated:

> There are a myriad of circumstances to be considered in each case in determining if the time the purchase price was paid was too remote to have any probative value in aiding the jury's ascertainment of present fair market value. Such circumstances include: degree of change in the condition of the property, changes in the condition of the surrounding property or in the character of the neighborhood, economic growth in the area, etc.

It is, we think, significant that the sale here considered was unique in that neither expert was able to produce a comparable sale other than the one consummated in 1963. Although the evidence introduced in the present case was remote in time, that remoteness did not necessarily deprive it of probative value. Comparable sales of pipeline

rights-of-way are scarce. Moreover, other elements of the sale made it extraordinarily comparable in terms of location, nature and size. The element of time was again a factor for cross-examination, argument and ultimate decision by the jury.

Appellant next urges us to find that the evidence of the 1963 sale was inadmissible because that sale was not a voluntary one and therefore did not reflect the fair market value of the rights acquired. This we decline to do. Forced sales are those occurring as a result of legal process. *Goodman v. State Roads Commission,* 251 Md. 727, 248 A.2d 796 (1969). In *Goodman, supra,* at 731-732, the Court of Appeals, quoting from *Nichols on Eminent Domain* (3d Ed. Vol. 5, § 21.23 p. 462), stated:

> * * * It has been said that "involuntary sales" imply compulsion under a decree, execution or something more than inability to maintain the property. The element of compulsion must be based on legal, not economic, factors. For the purpose of determining admissibility of comparable sales, compulsion is not shown to exist where a person is compelled by force of circumstances to part with property which he might desire to hold. Nevertheless, although it has been recognized that the concept of a forced or compulsive sale includes force or compulsion as a result of some kind of legal process, it has been held that compulsion may also be created by business circumstances.

One example of a forced sale is a tax sale. *Mayor and City Council of Baltimore v. Kelso Corporation,* 46 Md. App. 285, 416 A.2d 1339 (1980).

Colonial's 1963 purchase of the easement does not meet the definition of a forced or involuntary sale. There was no evidence offered that Colonial was legally compelled to build its pipeline in 1963 on Chertkof's property rather than on nearby or adjacent property or that Chertkof was a "holdout" in 1963. *See State Roads Commission v. Adams, supra.* Fur-

thermore, there was no evidence offered indicating that the circumstances surrounding the 1963 sale involved any legal or economic duress resulting in a distorted price being paid to Chertkof. To the contrary, the testimony indicated that Colonial paid the price they did to Chertkof because it was easier to deal with one property owner for the sake of convenience and because they had already completed the title search for the Sinclair line. We conclude that the 1963 sale was admissible into evidence as a voluntary, comparable sale and find no abuse of discretion by the trial court.

Appellant next complains that the trial court erred in permitting Chertkof's appraiser, Carl Heinmuller, a qualified right-of-way appraiser, to testify that the fair market value of the right-of-way taken by Colonial in this case was $322,806. The evidence indicated that Heinmuller was a senior member of the International Right-of-Way Association who had been involved in the valuation of real estate for more than 25 years. After listing his qualifications, the witness was accepted by the trial judge as a qualified expert in real estate appraisal. Mr. Heinmuller testified that in his expert opinion, the right-of-way here condemned was a salable commodity with its own fair market value. Using the 1963 conveyance as a comparable sale, Mr. Heinmuller translated the sale price in 1963 to 1981 dollars, adjusting for the expiration of time by the use of the consumer price index. The consumer price index is a general index which measures the increase in price of a basket of goods and services nationwide by averaging the prices at selective locations throughout the country.

Mr. Heinmuller testified that he had used the CPI before to adjust comparable sales and that such a practice was acceptable in the industry in order to adjust for current buying power of the dollar. It is to be noted that the appellant cross-examined the witness thoroughly on this theory and offered its rebuttal testimony which in effect suggested the only basis upon which to adjust for inflation and time was by comparable sales. Appellant's witnesses admitted there were no comparable sales which they knew about,

other than the 1963 sale. In the absence of an alternative method we cannot find that the trial court abused its discretion in permitting the testimony of the expert witness on his use of CPI and submitting to the jury the determination of the weight to be given to the expert's opinion.

Finally, appellant argues that Chertkof, as a "trustee," was not an "owner" within the meaning of the rule permitting an owner to testify as to his opinion of the value of property owned by him. The appellee in this case held title to the property as trustee of the David W. Chertkof Trust. The trial court initially qualified him as an expert in the value of real property. After he testified, however, his qualification as an expert was stricken and the jury was instructed that his testimony was not being accepted by the court as an expert in the field of real property, but rather as an owner of realty. The rule is stated to be that an owner of property is presumed to be qualified to testify as to his opinion of the value of property he owns; *Mayor and City Council of Baltimore City v. Schreiber, supra,* at 553, not because he has title, but on the basis that ordinarily the property owner knows his property intimately and is familiar with its value. *See Cofflin v. State,* 230 Md. 139, 186 A.2d 216 (1962).

The evidence showed that Chertkof testified that he was familiar with the property, had visited it, had received offers for purchase or lease of the property, and was generally familiar both physically and financially with the property in the area where it was located. With this information before the trial court, we find no error in permitting Mr. Chertkof to testify as to his opinion of the value of the property. Again, the weight of that opinion was a matter for determination by the jury.

*Judgment affirmed.*
*Costs to be paid by appellant.*