McRAE, Justice,
dissenting:
¶ 29. I disagree with the majority’s holding on the issue of exclusion of evidence of a comparable sale. The evidence was not sufficient to establish that the Trust was under a legal compulsion to sell to Koch Pipeline. The property owner should have been allowed to present this crucial evidence. This being so, the evidence of the sale was admissible, and the trial court erred in excluding it. Accordingly, I dissent.
¶ 30. The trial court erred in its exclusion of evidence of a sale made by the Trust in 1997 to Koch Pipeline for a liquid pipeline right-of-way easement along the north end of the Trust property. The majority argues that the Koch-Trust sale was properly excluded as a comparable sale, because it was compulsory. This premise is clearly in error.
¶ 31. This Court held in Crocker v. Mississippi State Highway Comm’n, 534 So.2d 549, 552 (Miss.1988), that:
Fair market value is a value in exchange. It is the sales price that would be negotiated between one who wants to purchase and one who wants to sell. Green Acres Memorial Park, Inc. v. Mississippi State Highway Comm’n, 246 Miss. 855, 153 So.2d 286, 289 (1963). The seller must be one who desires but is not obligated to sell, and the buyer must be under no necessity of having the property. Mississippi State Highway Comm’n v. Hillman, 189 Miss. 850, 198 So. 565, 571 (1940). See American Institute of Real Estate Appraisers, The Appraisal of Real Estate 33-34 (8th ed.1983).
In order for a sale to be inadmissible as an “involuntary sale,” “[t]he element of compulsion must be based on legal, not economic, factors.” 5 Nichols on Eminent Domain § 21.05 (3d ed.1999). See also United States v. Certain Land in the City of Fort Worth, 414 F.2d 1029, 1031 (5th Cir.1969) (“Economic causes are not enough to render a transaction involuntary and inadmissible.”); Colonial Pipeline Co. v. Gimbel, 54 Md.App. 32, 456 A.2d 946, 952 (Ct.Spec.App.1983) (“Forced sales are those occurring as a result of legal process.”). “[T]he mere fact that a corporation, which purchased land by voluntary sale, was invested with the power of eminent domain does not in and of itself show that the sale was a compulsory settlement rather than a fair transaction in the market.” 5 Nichols on Eminent Domain § 21.06, at 21-76 (footnote omitted). The majority notes that “compulsion may also be created by business circumstances.” While Koch may have needed the property to complete the project without rerouting the pipeline, such a condition does not qualify as a business circumstance that would render the sale compulsory. An example of a forced sale under business circumstances can be seen when a property is taken to discharge a debt, but the creditor had little choice in the matter. *581 Hickey v. United States, 208 F.2d 269, 275 (3d Cir.1953) (citing Lanquist v. City of Chicago, 200 Ill. 69, 65 N.E. 681 (1902)). Such is not the case here.
¶ 32. The trial court erred, when it excluded evidence of the Koch sale on the basis that Koch needed the property and, thus, held that the sale was not a voluntary one. It could have condemned the property and let the issue go to trial, but instead the trial court put a value on the property. This issue should have been presented to a jury with an explanation of why the trial court held the sale was involuntary. There was no finding that the Trust was under a legal compulsion to sell the property to Koch. Any objection to the evidence would go to its weight, not its admissibility.
¶ 33. The reason for this distinction between legal and economic compulsion was explained by the New Jersey Supreme Court of Errors and Appeals in Curley v. Jersey City, 83 N.J.L. 760, 85 A. 197, 198 (1912):
Almost all sales, however, are necessarily influenced on one side or the other by considerations outside of the fair market value of the property. Either the seller is influenced by the circumstances of his affairs, which make it desirable for him to sell even at some sacrifice, or else he thinks he is getting more for his property than its real worth; and, on the other hand, the purchaser has some special need or use for the property which makes it more valuable to him than to others not having such need, or else he thinks he is buying at less than the property is really worth. If the sale, as here, takes place between parties, one of whom has the power to condemn, it may likewise be that the seller or the buyer, and possibly both, are influenced by other considerations as well as by what they think is the fair market value of the property. The seller may think that if he does not sell amicably he will be put to the expense of being properly represented at the condemnation proceedings; but, on the other hand, he doubtless weighs against this the fact that a jury is very apt to give a liberal market value for properties taken under condemnation for the very reason that the owner is being compelled to sell against his will. The purchaser, on the other hand, knowing that what the law requires him to pay is at least a fair value, and knowing that a jury is inclined to construe this as meaning a value particularly ‘fair’ to the man who sells against his will, may also be somewhat influenced. But, in the absence of extraordinary circumstances, we are unable to see, as a general rule, why private sales to parties having the right to condemn do not come quite as near representing in their results true market value as do such sales made between parties, neither of whom have this power. It is easy enough to imagine special circumstances, falling in each class, where the result in the price obtained is, because of such special circumstances, so clearly abnormal as to destroy the similarity which must exist in order that the evidence shall be admissible. In other cases where the special circumstances are not of sufficient importance to produce this result, they may nevertheless affect the weight of the evidence, and be used for that purpose before a jury. This is so whether the purchaser is or is not a party having the power to condemn.
District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, 235 F.2d 864, 865-66 (D.C.Cir.1956) (“A comparable sale was not under compulsion, coercion, or compromise in this sense if the witness testifies, or if it is otherwise shown, that the public records do not *582 disclose that the sale was at foreclosure, under deed of trust securing an indebtedness, at execution or attachment, at auction, under pressure of the exercise of the power of eminent domain, or other coercion sui generis — types of legal compulsion generally disclosed by public records.”); see also City and County of Honolulu v. International Air Serv. Co., 63 Haw. 322, 628 P.2d 192, 199 n. 8 (1981) (admission of evidence of negotiated sales to the City of property similarly subject to condemnation not abuse of discretion); State ex rel. Dept. of Highways v. Terrebonne, 349 So.2d 936, 939 (La.Ct.App.1977) (“Our jurisprudence holds that a voluntary sale by an owner under threat of imminent expropriation is relevant in establishing market value, especially where it indicates the expropriated property is not worth less than the sum voluntarily paid by the expropriating authority.”); Township of Moorestown v. Slack, 85 N.J.Super. 109, 204 A.2d 23, 26 (1964) (“In the absence of affirmative evidence that the sellers were under compulsion, sales to an authority having the power of condemnation do not by reason of that fact alone necessarily lose competency or significant probative weight”).
¶ 34. Here, the evidence was not sufficient to establish that the Trust was under a legal compulsion to sell to Koch Pipeline. The property owner and the jury were deprived of a valuable piece of evidence that should have been presented to a jury. This being so, the evidence of the sale was admissible, and the trial court erred in excluding it. Accordingly, I dissent.
BANKS, P.J., joins this opinion.