833 A.2d 502

**BERN–SHAW LIMITED PARTNERSHIP**

v.

**MAYOR and City Council OF BALTIMORE.**

**No. 1, Sept. Term, 2003.**

Court of Appeals of Maryland.

Oct. 8, 2003.

John C. Murphy (John Cannan, Baltimore), on brief for petitioner.

Andrew G. Bailey, Principal Counsel, and Elva E. Tillman, Special Solicitor (Thurman W. Zollicoffer, Jr., City Solicitor, Baltimore), on brief, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

This case arises out of a "quick-take" condemnation [1] by the Mayor and City Council of Baltimore, respondent, of a proper-

---

1. In its simplest terms, a "quick-take" condemnation involves the "immediate taking of private property for public use, whereby the estimated reasonable compensation is placed in escrow until the actual amount of compensation can be established." BLACK'S LAW DICTIONARY 287 (7th ed.1999). This Court stated that a "quick-take" condemnation occurs where "the condemning authority takes possession of the property prior to trial upon payment into court of its estimate of the value of the property taken." *King v. State Roads Comm'n,* 298 Md. 80, 85–86, 467 A.2d 1032, 1035 (1983). Unlike a "regular" condemnation proceeding, where the value of the property is assessed by the jury "as of the date of the trial," a "quick-take" condemnation proceeding requires that a jury base its determination on the fair market value of the property *on the date of the taking. See* Md.Code (1974, 2003 Repl.Vol.), § 12–103 of the Real Property Article. ("[T]he value of the property sought to be condemned ... shall be determined as of the date of the taking, if taking has occurred ....") (alteration added). *See also J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm'n,* 368 Md. 71, 90, 792 A.2d 288, 299 (2002) ("[A]lthough a jury determines the fair market value of the property at trial, it bases its determination on the value of the property on the date of taking, rather than on the date of trial.") (alteration added).

The Maryland Constitution has authorized the Legislature to provide some governmental entities with "quick-take" condemnation authority. *See* Md. Const. Art. III, §§ 40A–40C (granting "quick-take" authority, for different purposes, to Baltimore City, Baltimore County, Montgomery County, Cecil County, the State Roads Commission, and the Washington Suburban Sanitary Commission); *King,* 298 Md. at 86, 467 A.2d at 1035 (" 'Quick-take' condemnation proceedings are authorized in

ty located at 324 West Baltimore Street in Baltimore City then owned by Bern–Shaw Limited Partnership, petitioner. Respondent filed the condemnation on October 3, 2000, and paid into court $234,000.00, which was the higher of two appraisals it had obtained, thereby "taking" the property on that date.[2] On December 10–12, 2001, more than fourteen months after the "taking," a jury trial was held in the Circuit Court for Baltimore City to determine the fair market value of the property. The jury found the value of the property to be $140,000.00.[3] After the verdict, petitioner filed a motion for a

---

limited circumstances by §§ 40A through 40C of Art. III of the Constitution of Maryland."). The Maryland Stadium Authority, subject to approval by certain other agencies, has purportedly been granted "quick-take" authority within Baltimore City. Md.Code (1986, 2003 Repl.Vol.), § 13–711(c) of the Financial Institutions Article. There is no specific reference to the Maryland Stadium Authority in the Maryland Constitution.

2. Md.Code (1974, 2003 Repl.Vol.), § 12–102 of the Real Property Article states:

"In this title, property is deemed to be taken:
(1) If the plaintiff lawfully is authorized to take the property before trial pursuant to Article III of the Constitution of the State, or any amendment to it, and the required payment has been made to the defendant or into court, any required security has been given, and the plaintiff has taken possession of the property and actually and lawfully appropriated it to the public purposes of the plaintiff."

3. Once a condemning authority exercises its "quick-take" power and deposits with the court its estimate of the value of the property taken, the condemnee (the former property owner) "may immediately withdraw the amount ... and may also recover the amount of any deficiency where the value of the property is later determined at trial to be greater than the amount initially deposited by the condemnor." *King v. State Roads Comm'n,* 298 Md. 80, 86, 467 A.2d 1032, 1035 (1983). *See also* Md.Code (1958, 2003 Repl.Vol.), Constitutions, Art. III, § 40A.

Article III, Section 40A provides, in instances where "quick-take" authority is granted, that the condemning authority may immediately take the property after it has paid the owner, or into court, the amount it estimates to be the "fair value" of the property. Furthermore, Article III, Section 40A provides that any "quick-take" statute enacted pursuant to Section 40A is required to contain a provision that "requires the payment of any further sum that may subsequently be added by a jury...." The Maryland Constitution does not expressly authorize any reduction in the sum paid to the owner or into court if a jury later finds that the value of the property is less than that already paid or deposited in a "quick-take" condemnation.

new trial, which was denied. Petitioner then filed an appeal of the final judgment and the denial of the motion for a new trial with the Court of Special Appeals. On December 3, 2002, that court affirmed the trial court's judgment. *Bern–Shaw P'Shp v. Mayor and City Council of Baltimore*, 148 Md.App. 313, 811 A.2d 869 (2002). Petitioner then filed a Petition for Writ of Certiorari with this Court, and, on April 9, 2003, we granted the petition. *Bern–Shaw v. Mayor and City Council of Baltimore*, 374 Md. 82, 821 A.2d 369 (2003). Petitioner presents four questions for our review:

"1. Is a remote sale of the condemned property, unadjusted to reflect current value, generally admissible to prove the property's fair market value as defined in Real Property Article Section 12–105?

"2. Where property is acquired by the quick take process, authorized by Article III, Section 40A of the Maryland Constitution, (a) does Rule 5–403 authorize a court to order that the view of the property provided for by Rule 12–207 not take place where prejudicial conditions exist? (b) Should the court have ordered that the view not take place in this case? (c) Should a new trial have been granted where,

---

In respect to condemnation proceedings by the State Roads Commission, a statute, Md.Code (1977, 2001 Repl.Vol.), § 8–337 of the Transportation Article provides, in respect to moneys paid into court under the Commission's "quick-take" authority, that:

"On written request ... the property owner is entitled to receive any amount paid into the court ... without prejudice to any of the property owner's rights, if the property owner agrees to repay to the Commission any excess of the amount over the final award that is allowed in the subsequent condemnation proceedings."

As far as we can discern, the Maryland Code contains no similar provision in respect to other entities, such as respondent, specifically requiring the condemnee to remit excess sums.

As we have indicated, the Maryland Constitution merely requires the condemnor to pay to the condemnee any sum a jury awards that is in excess of the sum initially paid to the condemnee. It does not require the opposite. The constitutionality of provisions requiring a condemnee in "quick-take" proceedings to remit to the condemning authority sums paid to the condemnee in excess of the amount later determined by a jury to be the fair market value of the subject property has yet to be determined. The issue was not raised in the petition and briefs filed in this case and, thus, we need not now resolve it.

during the course of the view, rats frightened jury members, causing the view to be aborted?

"3. Does the elaboration of a report by an expert witness at trial authorize the testimony by a rebuttal expert witness whose existence and report were not disclosed during discovery?

"4. Should a new trial have been ordered because the only exhibits that depicted the property prior to the date of condemnation were missing from the courtroom at the time of the owner's testimony?"

We answer in the negative the first of petitioner's questions and hold that the trial court was in error for allowing into evidence the price paid by petitioner in 1982 for the property in question. Absent an adjustment of the 1982 purchase price to reflect the current value, and considering that twelve comparable sales were entered into evidence by the parties to prove the property's value at the time of the taking, we hold that the evidence regarding the 1982 purchase price was not relevant to show the fair market value of the property as it existed in October of 2000.

We also hold that the trial court was in error for allowing a jury view of the property, over petitioner's objection, and that, in a "quick-take" condemnation proceeding, a jury view of the property is not mandatory under Maryland Rule 12–207(c) where the view would be unfairly prejudicial to the former owner. Under the specific facts of the case *sub judice,* the jury view of the property fourteen months after petitioner relinquished control over the premises was unfairly prejudicial. Given our holdings with respect to petitioner's first two questions necessitating a new trial, it is unnecessary to address petitioner's third and fourth questions. Accordingly, we reverse the judgment of the Court of Special Appeals.

## I. Facts

Petitioner owned property at 324 West Baltimore Street consisting of a five-story (with 20–foot ceilings) mixed commercial and residential use building that was more than 100 years old and contained 25,000 square feet of space. On

October 3, 2000, respondent instituted a "quick-take" condemnation action for immediate possession and title of the property. At the time of respondent's "quick-take" acquisition, the property was occupied by a photography studio on the first floor, an apartment on the second floor, storage on the third floor, and a sewing machine company on the fourth floor.

Shortly after taking possession of the five-story building, respondent proceeded to evict the tenants and to turn off the electricity to the building. In the process of moving out, the tenants apparently ripped fixtures from the walls and left trash scattered over the floors. At this point, title, possession, and responsibility for the premises was in respondent. At the time of trial fourteen months later, the building was full of trash and infested with rats. This was the building's condition at the time of the jury view on December 11, 2001.

The jury view appears to have been the cause of some concern at trial. Petitioner objected to the jury being allowed to view the building's interior, as it was at the time of trial filled with trash, adequate lighting would not be available because of the lack of electricity, the building was then infested by rats, and the jury would not be able to see all five floors. At trial, petitioner argued:

"[Petitioner]: And the problem is really two fold. One is, it's a big five story building. I don't think we can really expect the jury to climb—the elevators are not working.

THE COURT: Right.

[Petitioner]: To climb to the top. Part of the back of the building, because there's been a whole [sic] in the roof, the ceiling's coming down. I don't think you want a jury back there. So they really can't see the whole building. And the other problem is . . . as often happens and I'm sure the City didn't intend this. There were tenants on the first floor and when they moved out the City took the building and you look at the first floor now and you say well, this has been trashed. It looks terrible. There's trash thrown around. I went in the building the other day and saw a dead rat. You know, I just think it will be hard and very prejudicial for the

jury to be in there and see this. It wasn't, this is not the way—it's been over a year since they took the property so it's really not, you really can't see what it was like when they took it. And I, I'm just very concerned about them going in because they can't see it and because it's been trashed."

Respondent asked that the jury be allowed to see the interior of the building. Over objection by petitioner, the trial court ordered that the jury view the first two floors of the building.[4]

The resulting jury view was somewhat unusual. Due to the fact that there was no electric lighting in the building, flashlights were distributed to each of the jury members to illuminate the darkened interior. Because of the assorted refuse left behind by the evicted tenants, the jurors had to use caution in watching where they stepped. Also, upon reaching the second-floor landing, it appears that some of the jurors came upon the unwelcome sight of several rats and quickly fled down the stairs, unwilling to continue their tour of the premises.

At the trial itself, respondent called two expert appraisal witnesses. The first expert testified that the value of the property was $225,000.00 while the second testified that the value was $234,000.00. Petitioner also called two expert appraisal witnesses. Petitioner's first expert appraisal witness testified that the value was $500,000.00 and the second testified that the value was $513,000.00. To determine these valuations, all four of the expert appraisal witnesses used comparable sales approximately within five years of October 3, 2000, the day of the "quick-take" acquisition. Several of these comparisons were of buildings within the same block, and all

---

4. During the hearing concerning petitioner's motion for a new trial, the trial judge did not recall petitioner objecting to the jury view, and instead believed that petitioner had in fact requested it. The trial judge went on further to state that if petitioner had objected to the jury view he would have sustained the objection. When the attorney for the respondent was questioned about whether petitioner had objected, he recalled petitioner objecting to the jury view. As can be seen, *supra,* a sufficient objection was made at trial.

of the expert appraisal witnesses adjusted the sales prices to account for the lapse of time between the date of the comparable sale and the date of the take. In all, twelve comparable sales were introduced at trial.

A representative of petitioner, Harry Shapiro, was also called to testify as to the value of the building in question. It was during the cross-examination of Mr. Shapiro by respondent that Shapiro was asked how much had been paid for the property when petitioner acquired it in 1982, 18 years prior to the condemnation. Petitioner objected on the grounds that an 18 year old sale was too remote in time to be of value to the jury, *i.e.*, was irrelevant. The trial court overruled the objection, and Shapiro testified that the building had been purchased in 1982 for $85,000.00.[5] The deed of conveyance

---

**5.** The trial transcript of this interaction reads as follows:

"[Respondent]: Mr. Shapiro, you bought the building in 1982?
[Mr. Shapiro]: Yes.
[Respondent]: What did you pay for it?
[Petitioner]: Objection, Your Honor.
THE COURT: Overruled.
[Mr. Shapiro]: Frankly, I don't even remember.
[Respondent]: If I showed you a deed would that jog your memory?
[Mr. Shapiro]: What is on the deed—I'll tell you about that sale if you do—
[Respondent]: I'm sorry. I'm sorry. Mr. Shapiro, if I could just—
[Mr. Shapiro]: No. You can show me the deed.
[Respondent]: Thank you.
[Petitioner]: Could I object, Your Honor. It's a very ancient sale.
THE COURT: Overruled.
[Respondent]: Here you go.
[Mr. Shapiro]: Yes. This is a deed that's dated June 29, 1982, by and between Anita E.F. Barrett, personal representative for the estate of Michael Fisher, of Baltimore City Maryland, the first part and Bern Shaw Limited Partnership.
[Respondent]: And what's the consideration on the deed?
[Mr. Shapiro]: I don't know. Is it in the deed?
[Respondent]: Let me see if I can find it. Yes, sir, right here. This 'witness if'
paragraph in the middle there.
[Mr. Shapiro]: Okay, it says eighty five thousand dollars.
[Respondent]: Okay. And that's—
[Mr. Shapiro]: That's right.
[Respondent]: Thank you. Madam Clerk, could you mark this.

showing this remote purchase price was then moved into evidence.

The jury returned a verdict of $140,000.00. This verdict was considerably lower than any of the valuations given by either petitioner's or respondent's expert appraisal witnesses. The only evidence of any value less than the appraisals was the testimony that the purchase price of the 18–year–old sale had been $85,000.00. Petitioner moved for a new trial, but the motion was denied. Petitioner then appealed to the Court of Special Appeals. As previously mentioned, the Court of Special Appeals affirmed the trial court's judgment as to both the jury verdict and the denial of a motion for a new trial.

## II. Discussion

### A. Evidence Regarding the 1982 Sale Price of the Property

■ It is the jury's task to determine the fair market value of a condemned property, including determinations of value in "quick-take" contested proceedings. In *J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm'n*, we stated:

"Under § 12–105(b), 'fair market value' is defined as 'the price as of the valuation date for the highest and best use of the property which a vendor, willing but not obligated to sell, would accept for the property, and which a purchaser, willing but not obligated to buy, would pay, excluding any increment.' In rendering its inquisition, the jury may consider a number of elements that 'influence market value,' including, 'improvements on the land,' the 'sales of compara-

---

CLERK: Yes. That would be nine. (Plaintiff's Exhibit Number 9 was marked for identification.)
[Respondent]: Your Honor, I'd like to move this into evidence please.
THE COURT: Any objection?
[Petitioner]: Yes, Your Honor.
THE COURT: All right. I'll overrule the objection. I think that even though the price that was paid for it in '82 was remote, it helps the jury create a baseline in terms of understanding the highest and best use of the property."

ble lands,' 'evidence of reasonable probability of rezoning,' and ' "any special features which may enhance [the property's] marketability...." ' "

*J.L. Matthews,* 368 Md. at 88–89, 792 A.2d at 298 (quoting *Dodson v. Anne Arundel County,* 294 Md. 490, 495, 451 A.2d 317, 320 (1982) (internal citation omitted)).

▇▇▇ Because real property is unique, the most common method of establishing the value of the property that has been acquired by condemnation is through appraisals of fair market value in which comparable sales are often utilized. The comparable sales method of valuation has long been accepted in Maryland. *Brinsfield v. City of Baltimore,* 236 Md. 66, 202 A.2d 335 (1964). *See also State Roads Comm'n v. Adams,* 238 Md. 371, 378, 209 A.2d 247, 250 (1965) ("In Maryland it is well settled that evidence of the price for which similar property has been sold in the vicinity may legitimately be used in support of, and as background for, the opinion of an expert testifying as to the value of the property taken in condemnation proceedings."). It has been held by the intermediate appellate court that, in some unique instances, it may be proper to admit evidence of the prior sale of the property in question, even if the sale occurred several years prior to trial. *See Colonial Pipeline v. Gimbel,* 54 Md.App. 32, 456 A.2d 946 (1983) (evidence concerning an 18–year–old sale of property in question admissible where property was unique and no comparable sales existed.) With this in mind, we turn now to the first issue: whether it was permissible for the trial court to allow the jury to hear evidence regarding the price that petitioner paid for the building in question, a sale that was 18 years old at the time of trial. We hold that, under the circumstances of this case, such a remote sale was not relevant to the fair market value of the property at the time of the take. We further hold that its improper admission unfairly prejudiced the petitioner.

▇▇▇ As a threshold matter, no evidence that is alleged to relate to the fair market value of a property involved in a condemnation proceeding is properly admissible at trial unless

it is actually relevant. As this Court stated as a general evidentiary principle in *Lai v. Sagle,* 373 Md. 306, 818 A.2d 237 (2003):

> " 'Evidence, to be admissible, must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation; it is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation. Evidence is relevant, therefore, if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence, and a fact is material if it is of legal consequence to the determination of the issues in the case, which are dependent upon the pleadings and the substantive law.

> \* \* \* \* \* \*

> 'The general rule in this State is that all evidence that is relevant to a material issue is admissible except as otherwise provided by statutes or by rules applicable in Maryland courts. Relevant evidence may be excluded if the trial court [] believes that its probative value is substantially outweighed by the dangers of unfair prejudice.' "

*Id.* at 319, 818 A.2d at 245 (quoting *Myers v. Celotex Corp.,* 88 Md.App. 442, 454, 594 A.2d 1248, 1254 (1991), cert. denied, *Fibreboard Corp. v. Myers,* 325 Md. 249, 600 A.2d 418 (1992)). *See also Smallwood v. Bradford,* 352 Md. 8, 27, 720 A.2d 586, 595 (1998) (stating "Rule 5–401 defines relevant as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' "). The same has been held in criminal cases. *See, e.g., Andrews v. State,* 372 Md. 1, 19, 811 A.2d 282, 292 (2002) (stating that although relevant evidence is generally admissible, it "should be excluded by the trial court, if the probative value of such evidence is determined to be substantially outweighed by the danger of unfair prejudice."); *Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432, 439 (1997); *Grandison v. State,* 341 Md. 175, 206, 670 A.2d 398, 413 (1995), cert. denied, 519 U.S.

1027, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996); *State v. Joynes,* 314 Md. 113, 119, 549 A.2d 380, 383 (1988); Md. Rules 5–401, 5–402, 5–403.

■ Appellate review of a trial court ruling on the admissibility of evidence often is said to be based on the standard that such a ruling is "left to the sound discretion of the trial court," so that "absent a showing of abuse of that discretion, its ruling[] will not be disturbed on appeal." *Farley v. Allstate Ins. Co.,* 355 Md. 34, 42, 733 A.2d 1014, 1018 (1999) (alteration added) (citing *White v. State,* 324 Md. 626, 636–37, 598 A.2d 187, 192 (1991)). Application of that standard, however, depends on whether the trial judge's ruling under review was based on a discretionary weighing of relevance in relation to other factors or on a pure conclusion of law. When the trial judge's ruling involves a weighing, we generally apply the more deferential abuse of discretion standard. On the other hand, when the trial judge's ruling involves a pure legal question, we generally review the trial court's ruling *de novo.* *See Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002) ("[O]ur Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.") (alteration added) (citing *In re Mark M.,* 365 Md. 687, 704–05, 782 A.2d 332, 342 (2001)); *Register of Wills for Balt. County v. Arrowsmith,* 365 Md. 237, 249, 778 A.2d 364, 371 (2001) ("[A]s is consistent with our review for all questions of law, we review the order and judgment *de novo.*"). *See also In re Mark M.,* 365 Md. at 704–05, 782 A.2d at 342 (finding that where a "trial court has committed an error of law, [it is] to be reviewed by appellate courts *de novo.*") (alteration added). Likewise, if a court's ruling constitutes a " 'conclusion[] of law based upon the facts' " of a case, *Comptroller of the Treasury v. Gannett Co., Inc.,* 356 Md. 699, 707, 741 A.2d 1130, 1134 (1999) (alteration added) (quoting *Cassell v. Pfaifer,* 243 Md. 447, 453, 221 A.2d 668, 672 (1966)), the court's interpretation of the " 'law enjoy[s] no presumption of correctness on review' " and is " 'not entitled to any deference.' " *Gannett Co., Inc.,* 356 Md. at 707, 741 A.2d at 1134–35 (quoting *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 447 n.

2, 505 A.2d 113, 115 n. 2 (1986) (citation omitted); *Oliver v. Hays*, 121 Md.App. 292, 306, 708 A.2d 1140, 1147 (1998)).

Here, we hold that the price that was paid in 1982 for the property located at 324 West Baltimore Street was not relevant for the jury, at trial in 2001, to consider in its valuation of the property as of the time of the taking, which was fourteen months earlier. There was ample evidence at trial of comparable sales. Moreover, the time period of the purchase was simply too remote. *See City of Baltimore v. Schreiber*, 243 Md. 546, 551, 221 A.2d 663, 665 (1966) ("The general rule in this country and in this state is that 'evidence of the price paid for condemned real property on a sale prior to eminent domain proceedings is admissible in the proceedings at least where the sale is voluntary, is *not too remote in point of time*, or is not otherwise shown to have probative value.' ") (emphasis in original) (quoting W.R. Habeeb, *Admissibility, in Eminent Domain Proceeding, of Evidence as to Price Paid for Condemned Real Property on Sale Prior to the Proceeding*, 55 A.L.R.2d 791 (1957)).

While this Court has determined that there is "considerable latitude in the exercise of discretion by the lower court in determining comparable sales," the 1982 sale was not properly admissible as evidence of a comparable sale. *Lustine v. State Roads Comm'n*, 217 Md. 274, 280, 142 A.2d 566, 569 (1958) (citing *Patterson v. Mayor and City Council of Baltimore*, 127 Md. 233, 241, 96 A. 458, 461 (1915); *Williams v. New York, P. & N.R. Company*, 153 Md. 102, 108, 137 A. 506, 508 (1927)). As this Court recently stated, "[t]he comparable sales approach estimates market value by looking to *recent* voluntary sales transactions involving properties similar to the subject property, and adjusts for any differences between each comparable property sold and the subject property." *Washington Suburban Sanitary Comm'n v. Utilities*, 365 Md. 1, 10 n. 5, 775 A.2d 1178, 1183 n. 5 (2001) (alteration added) (emphasis added). In regard to comparable sales, Maryland has adopted as a "rule of thumb" the "five year—five mile" rule, that is, sales concluded more than five years

prior to the date of the taking and those more than five miles from the property can be excluded. *See Taylor v. State Roads Comm'n,* 224 Md. 92, 167 A.2d 127 (1961); *State Rds. Comm'n v. Adams,* 238 Md. 371, 209 A.2d 247 (1965); Maryland Pattern Jury Instructions, MPJI Cv 13:3(c)(3)(c) (4th ed.2002). Testimony based on remote in time sales adjusted for time by use of the consumer price index, however, in very limited circumstances, may sometimes be an acceptable method, absent the availability of alternative, preferable methods. *See Colonial Pipeline v. Gimbel,* 54 Md.App. 32, 456 A.2d 946 (1983).

Property values can greatly appreciate (or depreciate) over time. In this instance, petitioner purchased the building in question in 1982 for $85,000.00. At the time of trial, the estimates by expert appraisal witnesses ranged from a low of $225,000.00 to a high of $513,000.00. The original 1982 purchase price, 18 years old at the time of the taking, was simply not, under the circumstances here present, relevant to the jury's determination of the fair market value of petitioner's property at the time of the taking. This conclusion is compelled also by the fact that no effort was made to adjust the 1982 purchase price to its 2001 present value.

We are not alone in our assessment of the relevance of "time" in comparable sales. The leading treatise on condemnation also declares that the *time* of the previous sale is *always relevant* in determining whether the comparable sale is admissible as evidence. NICHOLS ON EMINENT DOMAIN (hereinafter NICHOLS) states, "[s]ales of property must be *recent* enough in time to provide good evidence of fair market value of condemned land. This is true no matter how similar the properties are in all other respects." 5 NICHOLS ON EMINENT DOMAIN § 21.02, at 21–55 (3d ed. Rev.2001) (alteration added) (emphasis added). NICHOLS further states:

"Unquestionably, the first issue to be resolved concerning the admissibility or exclusion of a sale or purchase of the property that is subject of a condemnation case is the date of the sale or purchase: is it relevant? For example, *among the facts to be shown to render such evidence*

*admissible are that the purchase was very recent and that values have not changed in the area since the purchase.*"

7A NICHOLS ON EMINENT DOMAIN § 9A.04[1][c][i], at 9A–32 (emphasis added). Other states have interpreted this issue similarly. *See Illinois State Highway Authority v. Grand Mandarin Restaurant, Inc.,* 189 Ill.App.3d 355, 136 Ill.Dec. 370, 544 N.E.2d 1145, 1149 (1989) ("When a parcel of land is condemned, the purchase price paid by the owner is a fact which may be considered in determining its value, *provided the sale was recent* and a voluntary transaction, with no changes in conditions or marked fluctuations in values having occurred since the sale.") (emphasis added); *Illinois Cent. R. Co. v. Stewart,* 265 Ill. 35, 106 N.E. 512, 513 (1914) (finding that evidence of the purchase price of property sixteen years before it was condemned was not relevant to its present value); *Southern Elec. Generating Co. v. Lance,* 269 Ala. 25, 110 So.2d 627, 632 (1959) (holding that a seventeen-year-old prior sale was too remote to be relevant at trial); *Davis v. Pennsylvania R. Co.,* 215 Pa. 581, 64 A. 774, 776 (1906) (holding that the trial court properly excluded evidence as to a seventeen-year-old purchase price, the court stating that such evidence would have given the jury no proper estimate of its value "immediately before the taking."); *United States v. A Certain Tract or Parcel of Land,* 47 F.Supp. 30, 33 (D.Ga. 1942) (stating that price paid for property sought to be taken is generally admissible as evidence of fair market value, "except where the purchase was so remote in point of time from the condemnation proceedings as to afford no fair criterion of present value or it is otherwise shown to have no probative value."); *Oregon R. & Navigation Co. v. Eastlack,* 54 Or. 196, 102 P. 1011, 1014 (1909) (holding that evidence elicited during cross-examination regarding what the owner had paid for the property 12–15 years prior was too remote and afforded "no proper basis for determining its present value.").

The 1982 sale, unadjusted to present value, was not "recent" enough to have had any measure of probity in this case. As

such, it was not properly admissible under Maryland Rule 5–402.

In its decision, the Court of Special Appeals stated that evidence of the 1982 purchase price of the property at 324 West Baltimore Street "went to the weight of the evidence, not its admissibility." *Bern–Shaw,* 148 Md.App. at 323, 811 A.2d at 874. The intermediate appellate court further stated that "[s]uch conveyances are generally recognized as admissible in condemnation cases." *Id.* at 321, 811 A.2d at 873 (alteration added). To the extent that the Court of Special Appeals held that the purchase price of a property is always relevant, it is expressly overruled.

Respondent argues that the Court of Special Appeals' holding in *Colonial Pipeline,* 54 Md.App. 32, 456 A.2d 946 (1983), should determine the present case, because it also deals with the admission of an 18–year–old sale as evidence of a comparable sale and in that case the decision by the trial court to admit such evidence was upheld. We disagree. Whereas *Colonial Pipeline* dealt with the condemnation of a unique pipeline right-of-way, for which no expert was able to find a comparable sale, the property at issue here is not so unique in its nature. In fact, the four expert appraisal witnesses called at trial in this present case produced twelve comparable sales that were introduced into evidence. The intermediate appellate court in *Colonial Pipeline* opined that "It is, we think, significant that the sale here considered was unique in that neither expert was able to produce a comparable sale other than the one consummated in 1963.... Comparable sales of pipeline rights-of-way are scarce." *Id.* at 41–42, 456 A.2d at 951–52. With twelve comparable sales introduced by both petitioner and respondent into evidence at trial in the case at bar, there was not a dearth of comparable sales. In this Court's decision in *Taylor v. State Roads Commission,* 224 Md. 92, 167 A.2d 127 (1961), we did uphold a ruling admitting evidence of the five-and-a-half year old sale price of the small farm property there in question, but *only* where that prior sale was the sole sale of a small farm testified to by any of the appraisal experts. *Colonial Pipeline* and *Taylor* are limited

in application to their facts and therefore demonstrate, at most, that prior sales of the property at issue in a case, even though remote, can be used at trial *only* if it is shown that there is a considerable absence of comparable sales to be used as evidence of fair market value.

■ Even if there is a lack of comparable sales, a remote sale only becomes relevant evidence if the price is properly adjusted for time by a professional appraiser. *See Colonial Pipeline,* 54 Md.App. at 43–44, 456 A.2d at 952–53 (18 year old sale adjusted by means of the consumer price index so that it could be argued that the prior 18–year–old sales price as adjusted, would reflect the then current value). In the case *sub judice,* not only were there ample comparable sales to support the appraisals thereby making the 18–year–old purchase price completely irrelevant, no attempt was made to adjust the 18–year–old sale to the property's value in October of 2000. The evidence concerning the 1982 sale was simply not properly admissible at trial.

### B. The Jury View of the Property

■ Maryland Rule 12–207(c) [6] concerns jury views of condemned property and states as follows:

"(c) **View.** Before the production of other evidence, the trier of fact shall view the property *sought to be condemned* unless the court accepts a written waiver filed by all parties. In a jury trial, each party shall inform the court, before the jury leaves for the view, of the name of the person to speak for that party at the view. Only one person shall represent all of the plaintiffs and only one person shall represent all of

---

**6.** Maryland Rule 12–207(c) is derived, and remains virtually unchanged, from former Maryland Rule 2–515(a). Records of the Rules Committee meeting concerning implementation of Maryland Rule 12–207(c) show that the Rule was not modified before acceptance, and that it was transferred into Rule 12–207(c) from Rule 2–515(a) in order to place it within the condemnation rules. No special mention is made in the Rules Committee history we have reviewed concerning "quick-take" condemnations and whether Maryland Rule 12–207(c) was meant to apply to such condemnations. Minutes of the Rules Committee, November 19, 1993.

the defendants, unless the court orders otherwise for good cause. Only those persons shall be permitted to make any statement to the jury during the view, and the court shall so instruct the jury. These persons shall point out to the jury the property sought to be condemned, its boundaries, and any adjacent property of the owner claimed to be affected by the taking. They may also point out the physical features, before and after the taking, of the property taken and of any adjacent property of the owner claimed to be affected by the taking. The judge shall be present at and shall supervise the view unless the court accepts a written waiver filed by all parties.

"The parties, their attorneys, and other representatives may be present during a view. A jury shall be transported to and attend a view as a body under the charge of an officer of the court, and the expense of transporting the jury shall be assessed as costs." [Emphasis added]

The first question that we have regarding the jury view of the property at 324 West Baltimore Street is not whether the view itself was unfairly prejudicial under Md. Rule 5–403 (which it was), but whether a jury view is even required by Maryland Rule 12–207(c) in a "quick-take" condemnation. We therefore commence our discussion of Maryland Rule 12–207(c) in respect to a "quick-take" condemnation proceeding by examining the proper standards for the interpretation of the Maryland Rules. In *Johnson v. State*, 360 Md. 250, 757 A.2d 796 (2000), we stated:

"With respect to the interpretation of the Maryland Rules, this Court has stated that, '[t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules.' *State v. Romulus*, 315 Md. 526, 533, 555 A.2d 494, 497 (1989). In order to effectuate the purpose and objectives of the rule, we look to its plain text. *See Adamson v. Correctional Medical Serv., Inc.*, 359 Md. 238, 250–51, 753 A.2d 501, 507–08 (2000); *Huffman v. State*, 356 Md. 622, 628, 741 A.2d 1088, 1091 (1999). To prevent *illogical or nonsensical interpretations of a rule*, we analyze the rule in its entirety, rather than independent-

ly construing its subparts. *See Marsheck v. Board of Trustees of the Fire & Police Employees' Retirement System of the City of Baltimore,* 358 Md. 393, 403, 749 A.2d 774, 779 (2000). If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule. *See Adamson,* 359 Md. at 250–51, 753 A.2d at 507–08; *Marsheck,* 358 Md. at 402–03, 749 A.2d at 779; *Huffman,* 356 Md. at 628, 741 A.2d at 1091."

*Id.* at 264–65, 757 A.2d at 804 (emphasis added).

 We hold that Maryland Rule 12–207(c) does not apply to a "quick-take" condemnation proceeding.[7] The very nature of a "quick-take" action seems at odds with the language in the Rule. It would, in many instances, simply be illogical to apply the "view" language in "quick-take" situations. Moreover, the first sentence of Maryland Rule 12–207(c) states that "the trier of fact shall view the property *sought to be condemned* . . . ." (emphasis added). As we stated earlier, what distinguishes a "quick-take" condemnation from a regular condemnation is that, in a "quick-take," the private property is immediately taken for public use and, therefore, at the instant of the taking, can be said to be "condemned."

 This is not the case in a regular condemnation proceeding. In a regular condemnation proceeding, possession of the private property is taken after trial and can only then be said to be finally "condemned." *See J.L. Matthews,* 368 Md. at 89–90, 792 A.2d at 299 ("[W]hen an entity has 'regular' condemnation authority, the fair market value of the property is assessed by the jury 'as of the date of trial' because the taking does not occur prior to the trial.") (alteration added). While a condemning authority normally can abandon a regular condemnation, it cannot abandon a "quick-

---

7. By this opinion, we bring this matter to the attention of the Rules Committee, for its proposal of a modification of Md. Rule 12–207(c)'s jury view provision consistent with this opinion. The Rule as presently drafted may be inconsistent, in that it states "sought to be condemned" and also refers to "before and after."

take" condemnation because a "taking" has already occurred.[8] Moreover, in a "quick-take" proceeding, the private owners no longer have control of the property once it is taken and, therefore, no longer have control over its condition after the taking. Because of this characteristic of a "quick-take," it may become unfair (and often illogical) in a "quick-take" proceeding that a jury should be able, over the objection of the persons whose property has already been taken, to view the property, when in fact conditions of the property may have changed so drastically since the "quick-take" as to make the appearance of the property at the time of trial substantially different from what it was at the time of the taking.[9]

In the case *sub judice,* there was a 14–month gap between the time of the "quick-take" in October of 2000 and the time of the condemnation trial in December of 2001. The condition of the building appears to have changed substantially by the time it was inspected by the jury. The evidence indicates that its former tenants had left numerous quantities of trash behind while moving out after their eviction by respondent. Fixtures had been ripped off the walls. According to the owner's undisputed testimony, there was a hole in the rear of the building that did not exist at the date of the condemnation, but rather was caused by tenants creating a makeshift means to remove their property upon their eviction by respondent. The building itself was left vacant for months. Respondent had the electricity to the building disconnected. Trash, debris and

---

**8.** As previously indicated, in "quick-take" condemnations the property is deemed "taken" when payment is made to the condemnee or into court. Md.Code (1974, 2003 Repl.Vol.), § 12–109(d) of the Real Property Article states: "No condemnation proceeding may be abandoned: (1) After taking has occurred; ..." Therefore, a condemnor in a "quick-take" proceeding is not at liberty, over the condemnee's objection, to abandon a condemnation.

**9.** One of the purposes of a "quick-take" condemnation is to permit the condemning authority to immediately alter the premises, or even to demolish the premises, in order that the public purpose for the condemnation may be more quickly realized. In many "quick-take" cases there would be little to view at the time of trial—or conversely a new structure, *i.e.,* a stadium or the like, is all that could be "viewed."

dead and live rats were scattered throughout the building. Because respondent possessed the building, petitioner, during the fourteen months, was powerless to remedy its condition.

We hold that there was no legitimate probative value concerning the jury view in this case. The jurors, in their view of the property in December of 2001, did not see the property as it existed at the time of the taking in October of 2000. Whereas it may be of significant probative value for a jury to view a property in a regular condemnation proceeding due to the fact that the taking itself does not occur prior to the trial, we hold that in a "quick-take" proceeding a jury view is not mandatory under Maryland Rule 12–207(c).

If both parties in a "quick-take" proceeding elected to have a jury view of the property, however, nothing in Maryland Rule 12–207(c) would prohibit it, but that was not the case here. Petitioner objected to the jury viewing the property in its dilapidated condition, but the trial court allowed for a partial view of the first two floors of the property. Because we hold that Maryland Rule 12–207(c) (the viewing provision) was not meant to apply to "quick-take" condemnation proceedings, the trial court was in error for ordering the jury to view the property over petitioner's objection.

Respondent argues that petitioner was not prejudiced during the view because a representative of petitioner accompanied the jury on the view to explain the property's condition prior to the taking. This reasoning is flawed. No explanation to the jury, under these circumstances, would have been sufficient to overcome the prejudicial impact of viewing the property as it existed on December 11, 2001. In the Illinois case of *Illinois State Highway Authority v. Grand Mandarin Restaurant, Inc.*, 189 Ill.App.3d 355, 136 Ill.Dec. 370, 544 N.E.2d 1145 (1989), the court decided to exclude evidence depicting the condition of a building after it had been subject to a "quick-take" condemnation, stating that "in a condemnation case the condition of the property is particularly material to its valuation," and "[t]he condition of the property following its abandonment by defendants and the removal of equipment

and fixtures would only serve to mislead the jury and unnecessarily prejudice their valuation of the property." *Id.* at 1148 (alteration added). *See Department of Public Works & Bldgs. v. Remmerie*, 29 Ill.2d 40, 192 N.E.2d 877, 878 (1963), where that court states:

> "The Eminent Domain Act provides for a view of the premises by the jury upon motion of either party (Ill.Rev. Stat.1961, chap. 47, par. 9).... The situation has been changed by the enactment of the 'quick taking' statute, and under that procedure there may now be situations in which a requirement that the jury must view the premises would result in injustice."

*See also Proctor v. Wolber*, 2002 Ohio 2593, *P56–57 (Ohio App.2002) [10] (stating that where an Ohio statute, Ohio Rev. Code Ann. § 163.12 (Anderson 2003), provided that a " 'view of the premises to be appropriated shall be ordered by the court when demanded by a party to the proceedings'.... Denial of the view is appropriate where the only purpose it could serve would be to show the property in an unfair light ... and the benefits of the view are outweighed by the injustice to the property owner and would deprive him of compensation to which he is entitled."). In *Ajootian v. Director of Public Works*, 90 R.I. 96, 155 A.2d 244, 247 (1959), after noting that "General Laws 1956, § 9–16–1, authorizes the trial court to order a view by the jury and this court has held that such an order is discretionary with the trial justice," the court held that the trial court's action of granting a jury view of the property "long after it was taken by the state and after the condition of the premises had materially changed for the worse" constituted an "abuse of discretion which was

---

**10.** This citation is apparently a vendor neutral citation method that Ohio, along with approximately eight other states, now uses instead of the printed reporter citation method. It appears that Ohio no longer distinguishes between "published" and "unpublished" case opinions, but other states that use the vendor neutral citation method still only report and publish cases that the those courts decide should be reported in a printed reporter. The vendor neutral citation method uses a paragraph pinpoint citation method rather than a pinpoint page reference to identify text within the opinion.

prejudicial to the petitioners' right to a fair hearing." Like our sister states, we hold that a jury view in such a "quick-take" condemnation proceeding, under circumstances such as existed here, is unfairly prejudicial to the condemnee and, in the present case, should not have been allowed by the trial court.

Furthermore, the owner is entitled to receive the exact same compensation under "quick-take" procedures as is available under a conventional condemnation. In this Court's ruling in *King v. State Roads Comm'n*, 298 Md. 80, 467 A.2d 1032 (1983), albeit relating to interest on a jury award, we explained:

> "As earlier observed, the purpose of awarding interest in a quick take condemnation case is to put the property owner in as good a position pecuniarily as he would have occupied if his property had not been taken. If the property owner had been paid on the day of the taking when he was entitled to receive the full value of the property taken, he presumably would have invested his funds in a prudent manner. *United States v. 429.59 Acres of Land*, 612 F.2d 459 (9th Cir.1980). Thus, when payment is delayed, the jury must fix interest on any deficiency award at the rate a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principle would receive."

*King*, 298 Md. at 91, 467 A.2d at 1038. One of the salient principles that we expressed in *King*, is that an owner cannot be made to suffer pecuniary loss as a result of the "quick-take" procedure as opposed to the regular condemnation procedure. It is clear to us that, in this instance, petitioner was unfairly prejudiced when a jury view was held in a building that respondent, who had already "taken" the building, allowed to remain strewn with trash, infested with rats and without electric lighting. This prejudice may have denied to petitioner the full value of the property at issue. If this was a regular condemnation case, the property would not have been out of the petitioner's control for the fourteen months before trial. An owner has a constitutional right to receive

the fair market value for the property that is taken as of the time it is taken: the price a "willing" seller would accept from a "willing" buyer. *See* Md.Code (1974, 2003 Repl.Vol.), § 12–105(b) of the Real Property Article. Because the jury viewed the taken property, property that petitioner had not been in control of for fourteen months, petitioner may not have received the fair market value of the property at the time it was taken by respondent in October 2000. We hold that the jury view of the property at 324 West Baltimore Street was unfairly prejudicial to petitioner and therefore should not have been allowed by the trial court over petitioner's objection to the view.

### III. Conclusion

We hold that when there exists competent and relevant evidence of recent comparable sales in a condemnation proceeding, evidence as to the price paid for the property being condemned is not generally admissible in order to determine the fair market value of the property if such evidence is found to be too remote to be relevant.

We hold that in a "quick-take" condemnation proceeding, Maryland Rule 12–207(c) does not require a jury view of the property. Because Maryland Rule 12–207(c) states that it pertains to "property sought to be condemned," the Rule does not apply to "quick-take" condemnations, which by their very nature involve property already "taken", *i.e.,* condemned. Therefore, the trial court was in error to allow a jury view of the property located at 324 West Baltimore Street over petitioner's objection. We hold that the jury view as ordered by the trial court was unfairly prejudicial to petitioner, thereby also violating Maryland Rule 5–403 which in pertinent part provides: "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND*

304

*TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*